**James PERRY, Plaintiff–Respondent,**

v.

**CITY OF ST. LOUIS CIVIL SERVICE COMMISSION, Defendant– Appellant.**

No. 68767.

Missouri Court of Appeals, Eastern District, Division Two.

May 28, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1996.

Tyrone A. Taborn, Edward J. Hanlon, Kathleen G. Tanner, St. Louis, for appellant.

Ronald L. Rothman, Clayton, for respondent.

DOWD, Judge.

The Civil Service Commission of St. Louis ("Commission") appeals from the judgment of the circuit court reversing the Commission's dismissal of a City of St. Louis ("City") employee James Perry. We affirm and remand.

Perry was employed by the City as a Correctional Officer II in the Municipal Jail since 1981. In March, 1992, Perry's supervisor received a letter from the Director of

Personnel alleging Perry was not residing in the City but was residing at the St. Louis County home of his mother. This letter prompted an investigation of Perry's residency that concluded Perry did not reside in the City. Perry was advised of the reasons for his proposed dismissal, and he defended himself against the charges at a pre-termination review. The pre-termination review determined Perry violated the City residence requirement and avoided payment of personal property tax as required by the personnel regulations. Perry's supervisor dismissed Perry on these grounds.

Perry appealed his dismissal to the Commission. He asserted that he lived with his grandmother in a house on Rowan Street in the City. To show this, Perry offered the following evidence. Mr. Burton, an insurance broker, testified that he sold Perry insurance to cover his personal belongings in the Rowan house. Burton also testified to visiting the Rowan house about fifty times over the past eight years, and Perry was there approximately half of the time. A neighbor of sixteen years to the Rowan house testified to seeing Perry at the house frequently, eating his meals and sleeping there. He also testified to seeing Perry's personal belongings, such as his clothes and stereo, in the house. Other witnesses also testified that they saw Perry's personal property at the Rowan address. A friend of Perry testified that he would often drive Perry and would pick him up and drop him off at the Rowan address. Co-workers and friends of Perry also testified to driving Perry to and from work, picking him up and bringing him home to the Rowan address. Perry's ex-wife testified she dropped off and picked up their son at the Rowan address during Perry's visitations with him. Perry's mother denied the allegation Perry lived with her in St. Louis County. Perry also offered various documents in which he listed the City as his address. These included savings account signature cards from the St. Johns Bank and Trust Company, charge account statements from Kriegel's and Famous–Barr stores, Perry's Missouri Driver's License, and a neighborhood video club membership.

The Commission, however, found Perry did not live in the City with his grandmother but instead lived at the County home of his mother. In so doing, the Commission relied on documents in which Perry indicated his residence was his mother's house in the County. On applications for Missouri Title and/or License for two automobiles, one in 1988, and one in 1989, Perry listed the County as his address. Other documents listing Perry's address in the County included a Retail Installment Sale Contract, an insurance binder, and agreements with a company that rents pagers. Furthermore, Personal Property Tax receipts showed (and Perry admitted) he paid personal property taxes on two automobiles to St. Louis County ("County") in 1989, 1990, and 1991. The Commission concluded Perry was dismissed for good cause because (1) he violated the City residency requirement, and (2) he "avoided" payment of City taxes, a cause for immediate dismissal pursuant to the City regulations.

Perry appealed the Commission's order to the circuit court. The circuit court reversed the Commission finding no support in the record to conclude that Perry lived in the County. Rather, the circuit court found substantial and competent evidence to support the conclusion that Perry lived at the Rowan house in the City. Furthermore, the circuit court reversed the Commission's dismissal based on Perry's tax avoidance because Perry was unaware that registering his automobiles in and paying taxes to the County violated the requirements of his employment with the City and because the evidence did not show Perry "avoided" paying taxes.

■ Our scope of review is limited to the order of the Commission, the administrative agency in this case, and not the decision of the circuit court. *Fehrman, v. Blunt*, 825 S.W.2d 658, 661 (Mo.App. E.D.1992). This reviewing authority "is limited to a determination of whether the Commission's findings are supported by competent and substantial evidence on the record as a whole; whether the Commission's decision is arbitrary, capricious or unreasonable; whether the decision involves an abuse of discretion; whether for any other reason, the decision is unauthorized by law; or those other grounds as

found in § 536.140.2, [RSMo 1994]. This court may not substitute its judgment for that of the Commission and must defer to the Commission's findings of fact." *Wirtz v. Civil Service Commission of St. Louis County*, 646 S.W.2d 384, 385 (Mo.App. E.D.1983) (internal quotations omitted). Whether evidence is substantial requires that the evidence "supports the discretionary determination" of the Commission. *Becker v. Missouri Department of Corrections and Human Services*, 780 S.W.2d 72, 76 (Mo.App. E.D.1989). We must consider the evidence "in a light most favorable to the administrative agency, together with all reasonable inferences which support it, and if the evidence would support either of two findings, the court is bound by the administrative determination." *Id.* at 76–77. The credibility of witnesses is for the determination of the Commission. *Edmonds v. McNeal*, 596 S.W.2d 403, 408 (Mo. banc 1980).

Article VIII, Section 2, of the City Charter states: "all officers and employees must reside in the City … during the entire tenure of his or her employment … and failing or ceasing so to reside, shall forfeit their office of employment." The guidelines and procedures for City management personnel to enforce this residency requirement are contained in the Department of Personnel Administrative Regulations (regulations). The regulations provided that where evidence exists that a City employee has violated the residency requirement, the employee is permitted to introduce offsetting proof. The regulations state that the single best piece of evidence of residency is a paid current personal property tax receipt from the City of St. Louis. Indeed, if the employee has a current personal property tax receipt from another jurisdiction, the employee is "deemed to be in violation of the residency requirement." The regulations explain the reason personal property tax receipts are ascribed such probative value is because, by Missouri statute, "tangible personal property

is to be declared and taxes paid in the county in which a person resides."

The regulations, however, acknowledge personal property tax receipts are not always determinative of residency and may inaccurately reflect the employee's residence for purposes of the City charter. For example, a discrepancy exists between the common law and City definition of residence, a discrepancy that, in rare instances, may result in the employee having a different residence for state tax purposes than for City purposes. Furthermore, the employee may have paid personal property tax to another jurisdiction by mistake, inadvertence, error, deceit, fraud or any number of reasons. The City's purpose is not to enforce compliance with state tax requirements, but, rather, to assure compliance with the City Charter. To serve this purpose, the regulations provide that "[a]ll available information should be taken into consideration" in determining an employee's residence. The City's ultimate inquiry must focus on the requirements of its own definition of residence.

■ The City has adopted in its regulations a specific definition of residence. The definition reads: "residence shall mean a person's usual and customary place of abode where the individual lives and regularly stays; it shall not mean a 'legal,' 'voting' or other address where the person does not actually live." This definition presents an objective standard of regular and customary physical presence, i.e. where the employee actually lives and stays. The definition specifically rejects other "legal" addresses where this regular and customary physical presence is not satisfied. Thus, subjective common law elements—abstract notions based on the employee's subjective sentiments and subjective intentions (*see Fritzshall v. Board of Police Com'rs*, 886 S.W.2d 20, 25 (Mo.App. W.D.1994))—are specifically excluded from the definition. This objective standard is consistent with fulfilling the purposes behind residency requirements.[1] Ad-

---

1. The City has not here expressed a purpose for its residency requirement, nor has a purpose been memorialized in a Missouri case. However, other cities have expressed the purpose of similar residency requirements in other jurisdictions. *See* 4 A.L.R.4th 380 § 3–5. For example,

in *Ector v. City of Torrance*, 10 Cal.3d 129, 109 Cal.Rptr. 849, 852, 514 P.2d 433, 436 (1973), the California Supreme Court held legitimate reasons for having a residence requirement included "enhancement of the quality of employee performance by greater personal knowledge of the

ditionally, it avoids the problems that have plagued those attempting to make similar residency determinations where the employee sets up a "paper" residency. *See e.g. Fritzshall, supra.*

 Here, Perry offered a myriad of evidence from a variety of sources showing customary and regular physical presence at the Rowan address in the City. The Commission did not find this evidence non-credible. Rather, it relied solely upon written declarations of residency and derivations of similar declarations (tax receipts) to determine Perry lived in the County. The Commission did not list one piece of evidence showing Perry's physical presence in the County or that he customarily and regularly stayed and lived there. While declarations of residency may often coincide with the declarer's actual residence and may suffice as an expedient method of making preliminary determinations, "The actual place of residence controls, one cannot be improvised by merely forming an intention to claim it elsewhere." *Trumbull v. Trumbull,* 393 S.W.2d 82, 91 (Mo.App.1965) (emphasis deleted). The City has adopted a completely objective standard for determining residency. The Commission abused its discretion and its decision was arbitrary, capricious, and unreasonable in that it misapplied its own rule of law by accepting the declared or "paper" residency over non-discredited evidence of a City residence satisfying the City's definition. Therefore, the Commission erred in dismissing Perry on this ground.

 We further hold the Commission erred in dismissing Perry for "[a]voiding the payment of City of St. Louis taxes." [2] No evidence was presented indicating Perry had failed to pay City earnings tax. Rather, the only evidence recited by the Commission to prove Perry violated this regulation were receipts of personal property tax payments on two automobiles owned by Perry to St. Louis County in 1989, 1990, and 1991. This evidence shows Perry did not pay a City tax; the Regulation, however, requires a showing that Perry "avoided" payment of City taxes. While we will not speculate as to the precise showing necessary to prove "avoidance," it is clear the mere non-payment of a City tax is not sufficient under the regulation to mandate dismissal. Otherwise, the regulation would absurdly require dismissal of a City employee who "avoids" City tax by not owning taxable personal property or who "avoids" City sales tax by purchasing a good outside of the City.[3] Since the Commission relied only on the mere non-payment of personal property tax, we find the Commission's ruling was not supported by substantial evidence.[4]

Because we find that the Commission erred in upholding Perry's dismissal, there is no reason for this court to address Perry's remaining contentions. The decision of the circuit court is affirmed, and the order of the Commission is reversed. Officer Perry is ordered to be reinstated to his position; and this case remanded to the Commission for a

city's conditions and by a feeling of greater personal stake in the city's progress....". Similarly, in *City and County of Denver v. State,* 788 P.2d 764, 771 (Colo.1990), the Colorado Supreme Court found persuasive the argument "requiring municipal employees to reside within the city limits will instill a sense of pride in their work by guaranteeing that the employees have a stake in the common enterprise of municipal government and thereby make them more attentive, compassionate and diligent in the way that they provide municipal services....". The Supreme Court of the United States has held these residence requirements valid. *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976).

2. This ground for dismissal is contained in the City's regulations. The regulations provide for immediate dismissal when an employee's action

is "so serious" that progressive disciplinary procedures are inappropriate and more drastic disciplinary measures are warranted. "[E]xamples of actions which *may* be exceptions to progressive discipline [including] ... [a]voiding the payment of City of St. Louis taxes." (emphasis added). However, the regulation states that the examples may not be "applicable in all situations due to mitigating circumstances."

3. No argument has been brought asserting the tax avoidance regulation is unconstitutionally vague. We premise our holding on other grounds.

4. We also express concern that the Commission's ruling failed to address the Regulation's directive that dismissal may not be applicable due to mitigating circumstances.

determination of any back pay due Officer Perry.

CRAHAN, P.J., and CRANDALL, J., concur.

