Patrick **TRUSLER**, Appellant,

v.

Bailus M. **TATE**, et al., who constitute the Board of Police Commissioners of Kansas City, Missouri, Respondent.

No. WD 52680.

Missouri Court of Appeals,
Western District.

March 25, 1997.

Robert L. Shirkey, Kansas City, for appellant.

Dale H. Close, Lisa S. Morris, Kansas City, for respondent.

Before HANNA, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

On March 19, 1995, the Board of Police Commissioners for Kansas City terminated the employment of Officer Patrick Trusler for violating its policy that requires members of the Kansas City Police Department to be "residents" of Kansas City, Missouri. The Circuit Court affirmed the decision of the Board. Officer Trusler now appeals the decision to this Court. On appeal, Officer Trusler alleges that: (1) the Board's finding that he was not a "resident" of Kansas City is not supported by competent and substantial evidence; (2) the Police Department's residency

requirement is void because it is not consistent with Section 84.570(1), RSMo 1994,[1] which on its face only requires police officers to be residents of the city at the time they are first employed; and (3) the Board's decision is void because it did not have the power to rule on his appeal since all of its members were not present at the hearings on his termination.

We find that the Board's decision that Mr. Trusler was not a resident of Kansas City was supported by competent and substantial evidence, that the Department's residency requirement is not inconsistent with Section 84.570 and hence is valid, and that the Board had the power to act in this matter where, as here, a quorum of the Board was present. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence at the hearing and in the record favorable to the Board's determination established as follows:

Officer Trusler began working for the Kansas City Police Department in 1970 as a civilian employee. In 1974, after completing training at the Police Academy, he became a police officer in the Department. Officer Trusler and his wife and child originally lived in Kansas City. He testified that in 1977, after his wife was harassed and threatened by two residents of Ruskin Heights, she began to fear for her safety and that of her children. As a result, in 1981 Officer Trusler and his wife bought a home in Peculiar, Missouri.

In 1981 the Police Department was not strictly enforcing its residency requirement. Many officers, including Officer Trusler, resided outside the city and maintained "paper" addresses within the city. *See Fritzshall v. Bd. of Police Comm'rs,* 886 S.W.2d 20, 21 (Mo.App.1994) (recounting the history of the enforcement of the residency requirement). In 1982, the Department notified officers that it would begin strictly enforcing its residency requirement. At that point Officer Trusler attempted to establish a "residence" in Kansas City by renting a room

---

1. All statutory references are to RSMo 1994.

from his parents in their home at 11212 Walrond in Kansas City. From that point his driver's license has listed the Kansas City address as his residence, and his voter registration shows the Kansas City address as his residence. He has also listed the Kansas City address on his federal, state, and city income tax returns. In addition, his vehicle had a Kansas City sticker during the years in which such a sticker was required.

Officer Trusler admits that the sole reason he has attempted to establish a Kansas City address is so that he will be in compliance with the residency requirement. He also admits that since 1981 he has spent the majority of his off-duty time at the house in Peculiar, and that his family resides in Peculiar.

More specifically, Officer Trusler testified that from 1982 until March or April of 1994 he slept at the Kansas City address only on three out of his five working days. On the other four days of the week he stayed at the house in Peculiar. In 1992, his wife lost her job as a nurse because she injured her back. In order to make up for the loss of income, Officer Trusler began working a second job as a guard at a Dillards store in Kansas City. In addition, because of the financial difficulties caused by the loss of his wife's job, Officer Trusler applied to the Department for a hardship withdrawal of some of his deferred compensation. In his application, he included copies of several bills. On the bills he deleted the Peculiar address because he thought that it would be better if the Department did not know of the house in Peculiar. He neglected to remove the zip code on one of the bills, however. The employee who reviewed the application determined that the zip code was for an address in Peculiar. This raised the employee's suspicions, and the employee raised the issue of Officer Trusler's residency in her report on the application.

In the meantime, in early 1994, Mrs. Trusler returned to school. Because of her busy school schedule, she asked her husband in March or April of 1994 to be around the house in Peculiar more so that he could look over her schoolwork and help with housework. He testified that because of her request he begin spending almost all of his off-duty time at the Peculiar address, and that he began staying there most nights. He testified that he only stayed at the Kansas City address for at most six nights from April 1994 until the hearing before the Board in the fall of 1994.

Unfortunately for Officer Trusler, it was in the fall of 1994 that the Internal Affairs Unit of the Kansas City Police Department began an investigation of Officer Trusler's residency. From September 9 to September 21, 1994, several officers from the unit observed Officer Trusler's Kansas City and Peculiar addresses in an attempt to determine to which home Officer Trusler went after work and from which home he came to work. On several occasions they saw Officer Trusler going to and from Peculiar and saw his vehicle at the house in Peculiar; they never saw him or his vehicle at his Kansas City address.

On September 22, 1994, the Internal Affairs Unit questioned Officer Trusler. As a result of the investigation, Stephen Bishop, the Chief of Police, recommended Officer Trusler's termination for violating the Department's residency requirement. The Board of Police Commissioners held hearings to consider Officer Trusler's termination on February 14, 1995, and March 14, 1995, pursuant to Section 84.600.

On March 29, 1995, the Board issued its decision terminating Officer Trusler's employment. The Board concluded that Officer Trusler has not been a resident of Kansas City since approximately August 1, 1981. It based its conclusion on evidence that, while Officer Trusler had maintained a room at his parents' house in Kansas City, he was not a "resident" of the city because, among other things: (1) he no longer paid rent for the room; (2) his telephone at that address was generally forwarded to the house in Peculiar; (3) at most he had stayed in Kansas City three nights per week; (4) presently, he was not spending any nights in Kansas City; (5) his wife and son have never stayed at the Kansas City address; (6) his son attends high school in Peculiar; (7) the mortgage of the house in Peculiar and the utility bills for the house are in both Officer Trusler and his wife's names; (8) he receives mail at the

house in Peculiar; (9) he keeps at least half of his clothing and a majority of his tools and equipment at the house in Peculiar; (10) all the family's vehicles, trailers, and personal property are insured on one insurance policy that is sent to the house in Peculiar; (11) he entertains friends and relaxes at the house in Peculiar and occasionally relaxes at a farm he owns in Barry County, Missouri, and (12) he admitted he only maintained the Kansas City address so that he could claim compliance with the residency requirement.

On March 5, 1996, the circuit court affirmed the Board's decision. Mr. Trusler appealed the Board's decision to this Court.

## II.  STANDARD OF REVIEW

■■■ On appeal, we review the decision of the Board, not that of the circuit court. *Fritzshall*, 886 S.W.2d at 23. We give due weight to the Board's expertise and experience and its opportunity to observe the witnesses. *Fleming Foods of Missouri, Inc. v. Runyan*, 634 S.W.2d 183, 184 (Mo. banc 1982); *Fritzshall*, 886 S.W.2d at 23. If the evidence supports two contrary findings, we must uphold the Board's factual determination. *Fritzshall*, 886 S.W.2d at 23. While we defer to the Board on questions of fact, we are not bound by its decisions on questions of law. *Fleming Foods*, 634 S.W.2d at 184; *Fritzshall*, 886 S.W.2d at 23. We do not substitute our judgment for that of the Board unless its action exceeds its authority; is not based on substantial and competent evidence on the record as a whole; is unreasonable, arbitrary, or capricious; involves an abuse of discretion; or is otherwise unlawful. § 536.140; *Fritzshall*, 886 S.W.2d at 23.

## III.  COMPETENT AND SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT OFFICER TRUSLER WAS NOT A "RESIDENT" OF KANSAS CITY

■■■ The Police Department's residency requirement is stated in Kansas City, Missouri, Police Department Policy 205, as follows:

1. Missouri Revised Statutes require that a sworn member be a resident for one year prior to the appointment as a Police Officer.

2. The Chief of Police may request, from the Board of Police Commissioners, waiver of the residency requirement until a sworn member completes the probationary period for a law enforcement officer.

3. A sworn member will remain a resident during the full term of employment with the department.

The policy also defines "residence" as a:

[p]lace where a person has his true, fixed, and permanent home and principal establishment and to which, whenever he is absent, he has the intention of returning.

This definition of "residence" is taken directly from prior Missouri case law. *Fritzshall*, 886 S.W.2d at 26; *Ferguson v. Bd. of Police Comm'rs*, 782 S.W.2d 814, 816 (Mo.App. 1990).

Officer Trusler does not dispute the existence of the evidence relied on by the Board. He instead argues that, when viewed as a whole, the evidence overwhelmingly establishes that he intended his residence to be at his parents' house in Kansas City. He directs the Court to evidence that he voted in Kansas City, registered his vehicle in Kansas City and listed the Kansas City address on his tax returns. He also note his statements that while his wife and children resided in Peculiar, he resided in Kansas City. Further, he argues that the fact that he rented the room in Kansas City solely for the purpose of satisfying the residency requirement is irrelevant to the issue of whether he intended to reside in Kansas City.

This Court has previously considered the police residency requirement and, more specifically, the intent required to establish residency, in *Fritzshall v. Bd. of Police Comm'rs*, 886 S.W.2d 20 (Mo.App.1994). That decision is dispositive here. In upholding the Board's termination of another officer for violating the residency requirement, *Fritzshall* thoroughly reviewed Missouri law on "residency." As we there noted, Missouri permits a person to have only have one "residence." *Id.* at 26. Further, the law presumes that a person resides where his or her

family permanently resides. *Id.* (citing § 1.020(13)).

*Fritzshall* rejected the notion that a "residence" could be merely a place where an officer hangs his clothes and sleeps in a bed during his duty week, votes and registers his car. *Id.* at 25. Instead, it noted, the concept of residence is more abstract. It is based on each officer's individual subjective sentiments and subjective intent. *Id. See also Perry v. St. Louis Civil Serv. Comm'n,* 924 S.W.2d 861, 864 (Mo.App.1996) (adopting this same language in a case considering the residency of a corrections officer).

For these reasons, as *Fritzshall* noted, residence is largely a matter of intention to be determined from a person's acts and utterances in the light of all the facts and circumstances of the case. *Fritzshall,* 886 S.W.2d at 26 (citing *State ex rel. King v. Walsh,* 484 S.W.2d 641, 644 (Mo. banc 1972)). In determining a person's intent:

> There is much authority for the proposition that one's residence is not simply where one chooses to say it is; nor is it even where one spends much time, registers to vote, and so on. It is, indeed, far more than the sum of one's declaration, together with several indicia of residence. The legal definition of "residence" does not necessarily correspond to other uses of the term. Missouri cases generally hold that the term "residence" in most legal contexts is equivalent to "domicile." "A man's residence, like his domicile, or usual place of abode, means his home, to and from which he goes and returns, daily, weekly, or habitually, from his ordinary avocations and business, wherever carried on." *Greene v. Beckwith,* 38 Mo. 384, 387 (1866).

*Fritzshall,* 886 S.W.2d at 24 (citations omitted). As a result, "[m]ere presence at another location, no matter how prolonged, will not affect a change of domicile without an intention to make the new place a permanent residence or home." *Id.* at 27.

In applying these principles to the case before it, *Fritzshall* noted that in favor of residence was evidence that the officer had spent duty nights and days at his uncle's house in Kansas City, voted in Kansas City, paid Kansas City personal property taxes, listed his Kansas City address on his driver's license, registered his vehicle in Kansas City, installed a telephone at the Kansas City address, said he intended to return to his Kansas City address, and had his wife file suit for separate maintenance solely for the purpose of trying to comply with the policy.[2]

On the other hand, *Fritzshall* noted, favoring a finding that the officer's residence was not in Kansas City was evidence that the Kansas City address was an "old family home" for which he paid no rent and that the officer entertained friends at the Raymore residence, remodeled the Raymore house, stayed at the Raymore home during and after an earlier suspension for violating the residency requirement, spent off days at the Raymore address, had a telephone at the Kansas City address with call forwarding to the Raymore address, and admitted that when he goes to the Kansas City address he intends to return to the Raymore address. *Id.* We held that this evidence was sufficient to support a decision either way, and that the Board acted within its discretion in determining that Kansas City was not the officer's residence.

Here, the evidence that the officer does not reside in Kansas City is even stronger than was the evidence in *Fritzshall.* As in that case, here the evidence shows that Officer Trusler established his Kansas City address only to get around the residency rule and not to establish a new family home, that he entertained friends at the non-Kansas City addresses, that he spent most of his off-duty time at the non-Kansas City address, that he forwarded his calls to the non-Kansas City address, and that he paid little or no rent for the Kansas City addresses.

---

2. Much of the *Fritzshall* opinion is spent construing a federal district court opinion that ordered the board not to consider the residence of the officer's wife in making its determination. This court decided, however, that the federal district court must have intended by its order to prevent the board from considering the wife's residence as a *dispositive* factor. *See Fritzshall,* 886 S.W.2d at 25 n. 1.

In addition, in this case there is evidence of Officer Trusler's intent to reside outside Kansas City, including evidence that Officer Trusler admitted that he had spent at most only six nights at his Kansas City address in the six months before his suspension because he was at the house in Peculiar doing housework and helping his wife. He also admitted that when he did go to his Kansas City address before work, he usually only stayed for about twenty minutes. There is also the fact that Officer Trusler moved with his wife to the house in Peculiar in 1981 and only later established his Kansas City address as the Department began to enforce the residency requirement. Finally, there is the testimony of surveillance officers who observed him at the house in Peculiar, but never at his Kansas City address. This evidence provided substantial and competent evidence to support the Board's decision that Officer Trusler had violated the residency requirement because he did not reside in Kansas City.

## IV. THE DEPARTMENT'S RESIDENCY REQUIREMENT IS NOT INCONSISTENT WITH SECTION 84.570

■ The Board based its termination of Officer Trusler on the requirements of Policy 205, which, as previously noted, requires that sworn members of the police force "remain a resident during the full term of employment with the department."

Officer Trusler argues that the portion of Policy 205 requiring officers to reside in Kansas City is void because it is inconsistent with Section 84.570(1), which provides:

> No person shall be appointed policeman or officer of police who . . . is not proven to be of good character, or who is not proven to be a bona fide citizen and resident of such city for a period of at least one year and a citizen of the United States, . . .; provided, however, that the board of police commissioners may, upon recommendation of the chief, waive the requirement of residency in the appointment of any policeman or officer of police for the period during which such appointee shall be on probationary status; provided, however, that on completion of the probationary period

> such policeman or officer of police becomes a bona fide resident of such city.

§ 84.570(1) (emphasis added).

Officer Trusler notes that the statute only explicitly requires police officers to be residents of Kansas City for one year prior to their appointment or on completion of their probationary period, not throughout the duration of their employment. He argues that as a result "sound rules of statutory construction" require the Court to read the statute as not allowing restrictions on the residency of non-probationary police officers. Because Policy 205 purports to impose such restrictions, Officer Trusler argues, it is void.

As the Board notes, however, Section 84.570(1) cannot be read in a vacuum. We must interpret it in light of other relevant statutes governing the actions of the Police Board and Police Department, including Section 84.420(2)(1). The latter statute permits the Department to "[a]dopt rules and regulations not inconsistent herewith governing the conduct of such police department." *Id.* This makes sense, for the statutes which deal with the Department do not cover all aspects of its governance and activities. If the Department could not implement consistent supplementing rules and regulations, it would not be able to function.

The question thus becomes whether the Department's residency requirement is "not inconsistent" with governing statutes. The term "not inconsistent" is not defined in the statute, but "inconsistent" has been defined by the Missouri Supreme Court in an unrelated context.

> A word of broad signification, implying contradiction, qualities which cannot coexist, not merely a lack of uniformity in details; and judicially defined as meaning contradictory, inharmonious, logically incompatible; contrary, the one to the other, so that both cannot stand; mutually repugnant or contradictory. Things are said to be inconsistent when they are contrary the one to the other, or, so that one infers the negation, destruction, or falsity of the other. . . .

*Hall v. Phillips Petroleum Co.*, 358 Mo. 313, 214 S.W.2d 438, 442 (1948).

Applying this definition, we hold the Department's residency requirement is not inconsistent with the governing statute. It can certainly logically coexist with section 84.570(1), as it at most merely supplements or extends the residency requirement in the statute. It in no way limits or contradicts the requirements of the statute. Therefore Section 84.420(2)(1) does not prevent the Department from adopting such a policy.[3]

## V. THE BOARD MAY ACT SO LONG AS A QUORUM IS PRESENT

■ Finally, Mr. Trusler argues that the Board's decision to terminate him was invalid because all members of the Board were not present at the hearings on his termination.

As Mr. Trusler notes, Section 84.350 provides for the establishment of a Board of Police Commissioners consisting of the Mayor and four other commissioners:

> In all cities of this state that now have, or may hereafter have, three hundred thousand inhabitants and not over seven hundred thousand inhabitants, there shall be, and is hereby established, within and for the cities, **a board of police commissioners to consist of four commissioners as provided in section 84.360, together with the mayor of such cities, or whosoever may be officially acting in that capacity, who shall be a voting member of the board.** . . .

§ 84.350(1) (emphasis added).

Officer Trusler notes that he was terminated under the procedure set forth in Section 84.600, which says that officers have the right to appear "before **the board** at a public hearing" (emphasis added). Officer Trusler argues that since the statute requires "the board" to be present at the public hearing, and since the board consists of four Commis-

sioners and the Mayor or his representative, taken together these two sections require the *entire* Board, including the Mayor or his representative, to be present at any termination hearing. As all concede that neither the Mayor nor his representative was present at the hearings on Officer Trusler's termination, he argues that his termination was invalid.

We disagree. As we noted earlier, the statutes governing the Board cannot be read in a vacuum. The primary goal of statutory interpretation is to determine the legislature's intent from the language it used and to give effect to that intent. *Hagely v. Bd. of Educ.*, 841 S.W.2d 663, 667 (Mo. banc 1992); *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App.1996). To determine the legislature's intent, other statutes relating to the same or related subject matter may be considered when they shed light upon the meaning of the statute being construed. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991).[4]

Of particular relevance here is Section 84.410. It provides that *"[t]he majority of the board shall constitute a quorum for the transaction of business. . . . No action shall be taken by the board unless three concurring votes are cast."* (emphasis added) This statute thus permits the Board to operate with less than all of its members present; only a quorum is required. The statutory requirement that a "quorum" shall consist of a majority of the Board and that a quorum can conduct the Board's business is consistent with the general practice in regard to private and governmental boards. Thus, *Black's Law Dictionary* defines a quorum as:

> A majority of the entire body; . . . . The number of members who must be present

3. Officer Trusler also argues that, if Policy 205 is invalid and the Board acted only under the statute, then he had a right to continued employment unless the statute clearly and unquestionably required continued residency within the city as a condition of employment. His claim appears to actually be a due process claim. Officer Trusler is correct in arguing that he has a constitutionally protected property interest in continued employment. *See Belton v. Bd. of Police Comm'rs*, 708 S.W.2d 131, 137 (Mo. banc 1986).

We need not address this issue, however, because we have found Policy 205 to be valid.

4. This rule of statutory construction is known as reading statutes in *pari materia*. *Gallagher*, 816 S.W.2d at 200; *Derossett v. Alton & Southern Ry. Co.*, 850 S.W.2d 109, 112 (Mo.App.1993). It is based on the supposition that related statutes are intended to be read consistently and harmoniously. *Gallagher*, 816 S.W.2d at 200; *Derossett*, 850 S.W.2d at 112.

in a deliberative body before business may be transacted. . . .

Such a number of the members of a body as is competent to transact business in the absence of the other members. The idea of a quorum is that, when that required number of persons goes into a session as a body, such as directors of a corporation, the votes of a majority thereof are sufficient for binding action. . . .

Black's Law Dictionary 1255 (6th ed. 1990).

Considered together, the relevant statutes do not suggest that "the board" means anything other than the quorum referred to in section 84.410. Because four commissioners were present at Officer Trusler's hearing, a majority of the Board was present and the Board was authorized to conduct its business. In the present case, this business was considering the charges against Officer Trusler. The Board determined to terminate Officer Trusler.

For the aforementioned reasons, the decision of the Board of Police Commissioners terminating Officer Trusler is affirmed.

ALL CONCUR.