Charles **MERTZLUFFT**,
Plaintiff/Appellant,

v.

The **CIVIL SERVICE COMMISSION** of the City of St. Louis and The City of St. Louis, Missouri, Defendants/Respondents.

No. ED 80060.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 16, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 2002.

Application for Transfer Denied
Oct. 22, 2002.

Liberman, Goldstein & Karsh, Stanley E. Goldstein, Eli Karsh, Clayton, MO, for appellant.

---

1. Mother's request to dismiss father's appeal for the failure of his brief to comply with Rule 84.04(c) is denied.

Patricia A. Hageman, City Counselor, Edward J. Hanlon, Carl W. Yates, III, St. Louis, MO, for respondent.

Before GEORGE W. DRAPER III, P.J. and MARY R. RUSSELL, J. and MARY K. HOFF, J.

PER CURIAM.

Charles Mertzlufft (Employee) appeals the circuit court's judgment which affirmed the decision of the Civil Service Commission of the City of St. Louis (Commission) and The City of St. Louis, Missouri upholding the dismissal of Employee for violation of a residency requirement for City of St. Louis (City) employees. We reverse and remand.

City employed Employee as a City firefighter from January 1978 until January 1996 when he was dismissed for residing outside City. Employee lived together with his wife and children in homes in City until about January 1994, when Employee moved into his mother's home on Marwinette Avenue in City, and Employee's wife and children moved into a home on Butler Hill Road in St. Louis County. In January 1994, Employee submitted to City's fire department a written notice of his change of address to the Marwinette Avenue house.

Employee was subsequently charged with violating Article VIII, Section 2 of City's Charter which in relevant part requires City employees to maintain a residence in City throughout their employment or "failing or ceasing so to reside, [to] forfeit their ... employment." In December 1995, Employee appeared before a disciplinary board or review board (Board) to respond to questions and present documentation regarding his residency. The Board found Employee innocent of the charge. In January 1996, the Fire Chief, to whom the Board made its recommenda-

tion, conducted a pre-termination review hearing with Employee, and then terminated Employee's employment for violating the City Charter's residency requirement.

Employee appealed his dismissal to Commission. Employee asserted he lived with his mother at the Marwinette Avenue address in City, and not with his wife and children at the home on Butler Hill Road in St. Louis County. To show this, Employee submitted: personal property tax receipts mailed to Employee at his Marwinette Avenue address which reflect that Employee paid City personal property taxes in 1994 and 1995, and a letter and records from the telephone company revealing Employee had and paid for a telephone at the Marwinette Avenue address during the relevant time period. Additionally, Employee testified he told the Fire Chief that he "moved back with [his] mom"; and he had a driver's license showing the Marwinette address; and Employee presented the testimony of two witnesses who rented apartments from him and made rental payments to him in person at the Marwinette Avenue address during 1994 and 1995, the period at issue in this case.

After a hearing before two different hearing officers, Commission issued a decision upholding the dismissal. The circuit court subsequently remanded the matter to Commission for further findings of fact and conclusions of law on all contested issues.

Without conducting additional hearings, Commission issued another decision upholding Employee's dismissal upon concluding Employee lived in St. Louis County with his wife and children rather than in St. Louis City with his mother. Specifically, Commission found that Employee was dismissed for good cause as set forth in Article VIII, Section 2 of City's Charter

and in Department of Personnel Administrative Regulation (Regulation) # 117(II)(B)(1)(*l*).[1]

In reaching its decision, Commission relied on the fact Employee had "[t]he majority of [his] personal possessions, including his recreational items, . . . in [his] residence in St. Louis County"; Employee had "spent the majority of his time off duty at [his] residence in St. Louis County"; Employee had "signed an insurance document under penalty of perjury that listed his residence in St. Louis County"; and, after receiving notice his residency was being investigated, Employee had "informed his appointing authority, the Fire Chief, that he was back in the City at his mom's house [which] implies [Employee] was violating the residency requirement."[2] Commission further found the testimony of Employee's spouse regarding Employee's "alleged City residency . . . was not credible and was unworthy of belief"; and Employee's testimony that he lived within City was not credible because a lease he presented to establish his City residency "was signed and dated prior to the revision date on" the lease and rent he "allegedly paid for the City

residence was deposited into an account held in" his name. Additionally, Commission concluded Employee did not offer credible evidence establishing "a valid City residence" because his "submission of various bills, statements and other exhibits does not offset the substantial and competent proof that [he] violated the City's residency requirement."

The circuit court affirmed Commission's decision. This appeal followed the circuit court's entry of judgment.

■ In a case such as this one, we review Commission's findings and conclusions rather than the judgment of the circuit court. *Sims v. City of Berkeley*, 2002 Mo.App. LEXIS 524, at *3, —— S.W.3d ——, ——, 2002 WL 416888 (Mo.App.E.D. Mar. 19, 2002) (No. ED79849). Therefore, we will not discuss Employee's points to the extent they challenge any action by the circuit court.

We are limited to deciding whether Commission's decision violates constitutional provisions; exceeds Commission's statutory authority or jurisdiction; is not supported by competent and substantial

---

1. Commission cited to Regulation 117(1)(1) and then quoted the part Commission relied on. The quoted portion is for Regulation 117(II)(B)(1)(1) and therefore that is the portion of the Regulation to which we refer. That portion states in relevant part:

   B. *Exceptions to Progressive Discipline:*
   1. There are some actions which are so serious that the progressive discipline procedure is inappropriate and, therefore, immediate suspension, reduction in pay, demotion or dismissal is warranted. Listed below are some *examples* of actions which may be exceptions to progressive discipline. . . .
   Some examples of causes for immediate dismissal:
   * * *
   l. Violation of the requirements of the City Charter relating to residence within the City of St. Louis.

2. In its decision, Commission also found Employee did not have a waiver of his residency requirement; Employee was not divorced or legally separated from his wife; Employee had had the opportunity to respond to the residency issue prior to his termination; Employee was not treated in a disparate manner with respect to his dismissal; and Employee was not dismissed because he owned property outside City or because his spouse resided outside City. These findings are not expressly challenged in this appeal.

evidence on the record as a whole; is unauthorized by law; is based on unlawful procedure or an unfair trial; is arbitrary, capricious or unreasonable; or involves an abuse of discretion. Section 536.140.2 RSMo 2000; *Perry v. City of St. Louis Civil Serv. Comm'n,* 924 S.W.2d 861, 863–64 (Mo.App. E.D.1996).

■ In his first point, Employee argues Commission erred in upholding his dismissal, and Commission's findings were not supported by competent and substantial evidence on the record as a whole; were arbitrary, capricious, and unreasonable; and constituted an abuse of discretion in that City did not bear its burden of proof to establish Employee resided outside City because Employee presented undisputed documentary and testimonial evidence of his City residence.

An administrative decision based on substantial evidence and reached by applying the correct law to the facts is not arbitrary and capricious or an abuse of discretion. *Abeln v. State Tax Comm'n of Missouri,* 793 S.W.2d 490, 491 (Mo.App. E.D.1990). Therefore, we must decide whether there is substantial evidence to support Commission's decision.

In order for evidence to be deemed substantial, the evidence must "support[ ] [Commission's] discretionary determination." *Perry,* 924 S.W.2d at 864 (internal quotation marks omitted) (quoting *Becker v. Missouri Dep't of Corrections and Human Servs.,* 780 S.W.2d 72, 76 (Mo.App. E.D.1989)). "Substantial evidence is . . . competent evidence, which, if believed, would have probative force upon the issues." *Ford Leasing Dev. Co. v. City of Ellisville,* 718 S.W.2d 228, 233 (Mo.App. E.D.1986) (internal quotation marks omitted) (quoting *Citizens For Rural Preservation, Inc. v. Robinett,* 648 S.W.2d 117, 124 (Mo.App. W.D.1982)). To ascertain whether there is substantial and competent evidence on the record as a whole, we must consider the evidence at the hearing in the light most favorable to the administrative agency. *Edmonds v. McNeal,* 596 S.W.2d 403, 406 (Mo. banc 1980).

Importantly, we may not substitute our judgment for that of the Commission. *Perry,* 924 S.W.2d at 864. If the evidence supports either of two findings, we are bound by the administrative determination. *Id.* The fact the record contains evidence in conflict with the administrative agency's findings is not a basis for reversal on appeal. *Weber v. Firemen's Retirement Sys.,* 899 S.W.2d 948, 950 (Mo.App. E.D.1995). We will, however, reverse if there is not substantial evidence supporting Commission's findings and decision. *Sims,* 2002 Mo.App. LEXIS 524, at *4, at ___.

Commission decided Employee was not a resident of City. City's Regulations define residence as meaning "a person's usual and customary place of abode where the individual lives and regularly stays; it shall not mean a 'legal,' 'voting' or other address where the person does not actually live." Regulation 114(VI)(A). We have held that "[t]he City has adopted a completely objective standard for determining residency," and we characterized the definition in Regulation 114 as presenting "an objective standard of regular and customary physical presence, i.e. where the employee actually lives and stays[, and as] reject[ing] other 'legal' addresses where this regular and customary physical presence is not satisfied." *Perry,* 924 S.W.2d at 865, 864. Therefore, subjective elements, such as "the employee's subjective sentiments and subjective intentions . . . are specifically excluded from this definition." *Id.* at 864.

In *Perry,* we found the Commission erroneously decided a St. Louis city employ-

ee was a St. Louis County resident. *Id.* at 864–65. We noted the Commission relied on written materials indicating the employee lived in the county and did not find "non-credible" the employee's evidence from various sources showing his customary and regular presence at the city address. *Id.* at 865. Additionally, we noted "[t]he Commission did not list one piece of evidence showing [the employee's] physical presence in the County or that he customarily and regularly stayed and lived there." *Id.* We concluded the Commission's decision was arbitrary, capricious, and unreasonable "in that it misapplied its own rule of law by accepting the declared or 'paper' residency over non-discredited evidence of a City residence satisfying the City's definition." *Id.*

We conclude *Perry* supports the reversal of the Commission's decision regarding Employee. Here, the only evidence on which Commission relied to establish Employee was a county resident, was evidence that Employee had a "majority of [his] personal possessions, including his recreational items" at the St. Louis County residence, evidence that Employee spent "the majority of his time off duty" at the county residence, evidence that Employee "signed an insurance document under penalty of perjury that listed his residence in St. Louis County," and a statement Employee made to the Fire Chief regarding Employee's move to his mother's home.

The fact that the majority of an employee's recreational possessions are located and recreational time is spent outside the City is not sufficient to establish residency outside City under City's objective standard. Otherwise, those City employees who spend the majority of their non-work time away from the City for recreational purposes may have difficulty establishing their city residence. Moreover, here there is no indication of record establishing the

extent of Employee's personal possessions beyond one or two truckloads he moved to his mother's city home; a computer, which his children use, that was moved to the county residence; unidentified files and boxes located at the county residence; and art supplies for his hobby that are in the basement of the county residence. To the extent Employee's personal possessions encompass those of his wife and children, it is reasonable that those items would be where those family members are living. Without more, this is not substantial evidence of Employee's county residence.

With regard to the Commission's finding that Employee deposited his rent in an account "held in" his name, the evidence in the record indicates the rent checks were deposited into a joint account bearing Employee's and his mother's names.

While the record does contain an insurance document signed by Employee indicating Employee resided in St. Louis County during a period pertinent to this case and includes a backdated lease for Employee's Marwinette address, there are other credible documents of record indicating that Employee resided at the Marwinette Avenue address during the relevant time period. Those documents, which were not specifically discussed by Commission, include: Employee's change of address card, indicating he had moved to the Marwinette address, was received by City in early January 1994, materials from the telephone company indicating Employee had and paid for his own telephone at the Marwinette address, and receipts indicating Employee had paid personal property taxes to City in 1994 and 1995, the years in question. Regulation 114 allows consideration of various types of documents to determine residency and expressly states that "[t]he single best piece of evidence [of City residence] is a paid current Personal Property Tax Receipt from the City of St.

Louis." Section V(D) of Regulation 114. In view of Regulation 114, Commission's general statement that Employee's "submission of various bills, statements and other exhibits does not offset the substantial and competent proof that [Employee] violated the City's residency requirement," without greater explanation does not suffice to find Employee is not a City resident.

Commission's reliance on the Fire Chief's testimony regarding a statement Employee made about moving back "into" City is also not persuasive. The transcript reveals the following conversation between City's counsel and Fire Chief Neil Svetanics:

> Q ... [D]id you have occasion to speak with [Employee] at, on any occasion either before or after the disciplinary review board hearing?
>
> A Yes, I did.
>
> Q And where did this conversation take place?
>
> A It took place in the kitchen of the Fire Chief's office on the second floor of Fire Department Headquarters.
>
> Q And what, if any, statements did [Employee] make to you at that time?
>
> A [Employee] was delivering some documents that were requested, and the secretary wasn't there, and he came in to give me the documents, and at that time he said that he knew that the residency investigation wasn't my fault and that he just wanted to tell me he was back in the City now at his mom's house, and words to that effect.

The transcript further reveals the following conversations between Employee's counsel and Fire Chief Svetanics:

> Q Let's get to this statement ... that happened in the kitchen. To the best of your knowledge, what did [Employee] say?

> A ... He said something to the effect that, we know it's not you causing these residency hearings, and I just want you to know I'm back in the City now, I'm at my mom's.

> * * *

> Q [Employee] was there delivering the documents that were requested of him to prove his residency, wasn't he, at the time of that conversation?
>
> A I believe that to be true. It was a while back now. But
>
> Q And you heard him to say he was back with his mother, didn't you?
>
> A Something to that effect, that he was back in the City now with his mother.
>
> Q Yeah, yeah, something to that effect. You don't even remember the exact words, do you?
>
> A No, I don't.
>
> Q At the time you testified here you said something to that effect also.
>
> A If that's what the record shows. I don't remember saying it, exactly how it was.
>
> Q Well, I can refer you to the record. At Page 48: ...

> * * *

> ... "What if any statements did [Employee] make to you at that time. [A] He was delivering some documents that were requested, and the secretary wasn't there, and he came in to give me the documents, and at that time he said he knew that the residency investigation wasn't my fault, and he just wanted me to, to tell me he was back in the City now at his mom's house, and words to that effect."

You didn't remember the words to that effect when you gave this first testimo-

ny. But he told you that he was back at his mom's house, didn't he?

A. Yes.

These comments regarding what Employee said about moving in with his mother, "or words to that effect," are ambiguous at best and allow the drawing of various conclusions. While these comments by Fire Chief Svetanics support a determination Employee moved back with his mother, they do not conclusively establish Employee was living outside City before moving back with his mother.

We conclude Commission's decision is not supported by substantial evidence in light of *Perry, supra,* Regulation 114, and evidence, including paid City personal property tax receipts for Employee's City address during the relevant time, Employee's driver's license having the City address, documents revealing Employee had a telephone at the City address, and testimony Employee was seen by his tenants at his City address on approximately twenty-four occasions during the relevant time period, which Commission did not expressly address or reject.

Due to our resolution of the first point, we will not address Employee's second and third points.

We reverse the circuit court's judgment and Commission's decision, and remand to Commission for a determination of any back pay and other relief due Employee.