**Robert T. VIVONA, Appellant,**

v.

**Karl ZOBRIST, et al., Respondents.**

**No. WD 69244.**

Missouri Court of Appeals, Western District.

Aug. 11, 2009.

Robert L. Shirkey, Kansas City, MO, for Appellant.

Daniel J. Haus, Kansas City, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., THOMAS H. NEWTON, C.J. and JAMES E. WELSH, J.

THOMAS H. NEWTON, Chief Judge.

Mr. Robert T. Vivona appeals from the trial court's judgment affirming the decision of the Board of Police Commissioners of Kansas City (the Board) to terminate his employment as a non-sworn member of the Kansas City Police Department (the Department). We affirm.

**Factual and Procedural Background**

Mr. Vivona was terminated from his position as a civilian employee of the Kansas City Police Department for failure to comply with the Department's residency requirement, Policy 205–2. The policy required him to be a resident of Kansas City or to become a resident within nine months after his appointment date. The policy defines "residence" as the "[p]lace where a person has a true, fixed, and permanent home and principal establishment and to which, whenever absent, has the intention of returning." This definition comes directly from Missouri case law. *Trusler v. Tate,* 941 S.W.2d 794, 797 (Mo. App. W.D.1997).

Mr. Vivona was hired in July 2001. At that time, he and his family lived in Lee's Summit. To comply with the policy, he was required to become a Kansas City resident by April 16, 2002. He contends he submitted a request for an extension but did not receive a response. On March 15, 2002, he submitted a personnel change of status form showing that he lived at an address on East 50th Terrace in Kansas City, Missouri, and listing his cell phone as his telephone number. Mr. Vivona's son, a Kansas City police officer, had purchased the home on March 15, 2002. However, the previous owners had leased back the residence and were living in the home until

March 27, 2002. At the hearing Mr. Vivona stated the March 15 date was a "big lie" but that he moved into the home on March 27.

In April, Mr. Vivona's son and another Kansas City police officer, Craig Hontz, agreed that Officer Hontz would move into the home at East 50th Terrace, paying monthly rent and half the utilities. All the utility bills were put into Mr. Vivona's name. Officer Hontz lived there until October 2002. At the hearing, it was adduced that Officer Hontz did not believe Mr. Vivona lived in the East 50th Terrace home. Officer Hontz had seen Mr. Vivona occasionally at the home doing yard work or repairs, but had never seen Mr. Vivona doing work in the kitchen and had never seen his toiletries in the shower. There was a spare bedroom with a bed and entertainment center; Officer Hontz had been storing his file cabinet and boxes there.

In May 2002, Mr. Vivona sold one of his two houses in Lee's Summit. His wife and two youngest children then moved to the second Lee's Summit home. Mr. Vivona also moved his insurance business to the basement of that home. The utilities at the address were listed under either Mr. Vivona's name or his and his wife's names jointly. On May 2, 2002, Mr. Vivona's son submitted a personnel form to the department showing Mr. Vivona as his emergency contact at the second Lee's Summit home. Also in May, Mr. Vivona bought a vehicle and titled and licensed it at the Lee's Summit address. He testified this was because the vehicle was for his younger son. In July 2002, Mr. Vivona and his wife opened a credit union account using the Lee's Summit address.

In August 2002, Mr. Vivona was made aware that the Department was investigating his residency. At a meeting on August 12, 2002, Mr. Vivona was informed that he was not satisfying the residency requirement and was given until September 30 to comply. In September, he changed his residency address with the Missouri Department of Insurance to the East 50th Terrace address. Also in September Officer Hontz's things were moved out of the spare bedroom at East 50th Terrace. Sometime prior to October, Mr. Vivona attempted to register as a Kansas City voter. Mr. Vivona also changed his vehicle registrations and driver's license to the Kansas City address. On October 7, 2002, Mr. Vivona indicated to the Department that he was negotiating the purchase of a home in Kansas City and hoping to close in January 2003.

On October 16, 2002, the Chief of Police (the Chief) terminated Mr. Vivona's employment for his failure to comply with the residency policy by making Kansas City his true, fixed, and permanent home. His supervisor's memorandum indicated a belief that Mr. Vivona was creating a "paper address" and "has been circumventing the policies of the department in an attempt to comply with the residency requirements in his own time and in his own way." Mr. Vivona sought the Board's review of his termination and signed a "Board Hearing Waiver" and "Stipulation" in which he stated he understood that he was waiving his right to a hearing before a quorum of the Board and agreed to have his case heard before a hearing officer. Hearings were held in April and June of 2003. Mr. Vivona attempted to show both that he complied with the policy and that the termination was retaliatory. At the conclusion of the proceedings, the hearing officer made findings of fact and conclusions of law. He recommended that the Board affirm Mr. Vivona's termination. However, he also recommended that because Mr. Vivona had belatedly attempted to comply with the residency policy and had incurred

substantial expense in doing so, Mr. Vivona be reinstated.

In August of 2003, the Board affirmed the Chief's termination of Mr. Vivona based on his failure to become a Kansas City resident. Mr. Vivona appealed to the circuit court. The circuit court reversed and remanded the case to the Board to reconsider its order "taking more fully into account in its reconsideration the recommendations" of the hearing officer. After remand, the Board again voted to affirm Mr. Vivona's termination. Its order adopted the hearing officer's findings but rejected his recommended discipline as "inconsistent with and not supported by his Findings of Fact and Conclusions of Law." Mr. Vivona sought review in the circuit court, which affirmed the Board's decision. Mr. Vivona appeals to this court.[1]

### Standard of Review

■■■ We review the decision of the administrative agency, not the judgment of the circuit court. *Coffer v. Wasson–Hunt,* 281 S.W.3d 308, 310 (Mo. banc 2009); 536.140.2.[2] We determine "whether the agency's findings are supported by competent and substantial evidence on the record as a whole; whether the decision is arbitrary, capricious, unreasonable or involves an abuse of discretion; or whether the decision is unauthorized by law." *Id.* (in-

ternal quotation marks and citation omitted). We review the entire record, not just the evidence supporting the Board's decisions. *Id.* Where the evidence supports opposing findings, we afford deference to the agency's decision. *Id.* However, we do not defer to the Board's findings on questions of law. *Trusler,* 941 S.W.2d at 797.

### Legal Analysis

Mr. Vivona raises four points on appeal. First, he contends that the Board did not have the authority to delegate the hearing of his case to a hearing officer. Second, Mr. Vivona contends the Board did not have the authority to institute a residency requirement. Third, Mr. Vivona argues that termination was not the appropriate discipline. Finally, Mr. Vivona argues that the Board was bound by the hearing officer's disciplinary recommendation.

### *The Board's Authority to Delegate the Hearing*

■■■ In his first point on appeal, Mr. Vivona argues that the Board did not have authority to delegate the hearing of his disciplinary case to a hearing officer because he has a right to a public hearing before the Board. Section 84.610 entitles Mr. Vivona to have his disciplinary matter heard by the Board.[3] *See Wheeler v. Bd.*

1. In August of 2008, this court granted the Board's motion to stay Mr. Vivona's appeal until a mandate was issued in *Coffer v. Wasson–Hunt,* 281 S.W.3d 308 (Mo. banc 2009). After the Missouri Supreme Court issued its mandate, we granted a motion to lift the stay.

2. Statutory references are to RSMo 2000 unless otherwise indicated. Section 536.140.2 provides for appellate review of the administrative ruling to determine whether the administrative action:

 (1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;
(3) Is unsupported by competent and substantial evidence upon the whole record;
(4) Is, for any reason, unauthorized by law;
(5) Is made upon unlawful procedure or without a fair trial;
(6) Is arbitrary, capricious or unreasonable;
(7) Involves an abuse of discretion.

3. Section 84.610 provides:

 Any police officer, policeman or employee adversely affected by any action taken by

*of Police Comm'rs of Kansas City,* 918 S.W.2d 800, 805 (Mo.App. W.D.1996) (holding that a civilian employee was entitled to a public hearing on termination under section 84.610); *see also State ex rel. Rogers v. Bd. of Police Comm'rs of Kansas City,* 995 S.W.2d 1, 6–7 (Mo.App. W.D.1999) (holding that police officer was entitled to hearing before the Board under section 84.600). However, Mr. Vivona's waiver, signed prior to the hearing of his case, provided that he waived his right to a hearing before a quorum of the Board and requested a hearing officer be assigned. In his stipulation Mr. Vivona further agreed to have his case heard before a specific hearing officer.

As the Board argues, the Missouri Supreme Court's recent decision in *Coffer* is directly on point. 281 S.W.3d 308. In that case, Mr. Coffer, a police officer, waived his right to a board hearing and agreed to appear before a hearing officer. *Id.* at 309. The high court rejected Officer Coffer's argument that the hearing was a "sham," specifically noting that he had waived his right and, "[a]s with any other statutory right, an officer can waive his or her right to appear before the board." *Id.* at 312. Although *Coffer* deals with section 84.600, which addresses the hearing right for cause removal of police officers, as opposed to section 84.610, which includes the hearing right of civilian employees and

deals more generally with adverse actions, on this issue, we see no practical distinction between the two.[4] Consequently, under *Coffer,* Mr. Vivona's first point is denied.

### The Board's Authority to Institute a Residency Requirement

In his second point, Mr. Vivona asserts that the Board does not have statutory authority to impose a residency requirement on its personnel. He contends that while the Board "may have broad discretion in assessing the conditions for the stated qualifications, that power does not permit the Board to add qualifications" not set forth or removed by statute. The Board, however, argues that the policy is proper under its general authority to set department policy.

■ We first dispose of Mr. Vivona's argument as it concerns section 84.570.[5] Prior to 2003, that statute required Kansas City police officers to be residents of Kansas City. Mr. Vivona argues that because the section was amended and the statutory residency requirement removed, we must infer a legislative intent to abrogate a residency requirement. However, section 84.570 is inapplicable to Mr. Vivona by its own terms. The section sets statutory requirements for the employment of police officers; Mr. Vivona was a non-sworn civil-

---

the chief ... shall have the right to have such action ... reviewed by the police board.... [T]he police board shall grant a public hearing within fifteen days after the filing of such request.... The board shall have the power upon such hearing to affirm, modify or reverse such action of the chief and may make such other orders as the board may deem necessary.

4. Board Resolution No 02–06, approved in July of 2002, establishes the procedure for waiver under both statutes without distinction.

5. Section 84.570.1 provides in part:

No person shall be appointed policeman or officer of police ... who is not proven to be a bona fide citizen of the United States, or who cannot read and write the English language and who does not possess ordinary physical strength and courage, nor shall any person be originally appointed to said police force who is less than twenty-one years of age. Notwithstanding any other provision of law, the board shall have the sole authority to determine conditions of employment for police officers pursuant to section 84.460.

ian employee. Moreover, the amendment became effective June 27, 2003—after Mr. Vivona's termination.

 Second, we reject Mr. Vivona's contention that the Board does not have authority to set employment requirements beyond those prescribed by statute. The Board is "a state agency created by statute and endowed with the power to adopt rules and regulations governing the conduct of the police department." *Powell v. State Farm Mut. Auto. Ins. Co.*, 173 S.W.3d 685, 689 (Mo.App. W.D.2005). The Board's enabling statute, section 84.420, sets forth the Board's duties, responsibilities, and its authority to set policy. It mandates, *inter alia*, that the Board set policy to fulfill its duties and "[a]dopt rules and regulations not inconsistent herewith governing the conduct of [the] police department." § 84.420. As we stated in *Trusler*, "the statutes which deal with the Department do not cover all aspects of its governance and activities. If the Department could not implement consistent supplementing rules and regulations, it would not be able to function." 941 S.W.2d at 799 (finding no inconsistency where the Board's policy required residency throughout officer's employment while statute required lesser time period). Here we see no inconsistency between the Board's residency requirement for non-sworn civilian employees and its governing statutes. The policy "logically coexist[s]" with the statutes and "at most merely supplements or extends" their requirements. *See id.* at 800. Consequently, we do not find Personnel Policy 205–2 to be beyond the Board's

authority. Mr. Vivona's second point is denied.

### Cause for Discipline vs. Cause for Termination

 In his third point on appeal, Mr. Vivona argues that even if Mr. Vivona violated the residency policy, termination was not the appropriate discipline to impose. He contends that the Chief had the burden of proof to show both cause for discipline and "that termination was the appropriate degree of discipline." Because of mitigating evidence, he argues, the Board's decision to terminate was arbitrary and capricious.[6] The Board, however, contends that its decision to terminate was based on Mr. Vivona's violation of its residency policy and that there was substantial and competent evidence supporting its decision.

 Mr. Vivona relies on *Holt v. Clarke* for his argument that the Board was required to make specific findings as to mitigating evidence. 965 S.W.2d 241 (Mo.App. W.D.1998). In *Holt*, we reversed and remanded the Board's decision to terminate a police officer because it had not made sufficient findings of fact on the controlling issues in the case. *Id.* at 245. *Holt* does not stand for the proposition that the Board must consider mitigating evidence; the rule it advances is that the Board must set forth sufficient findings of fact on controlling issues to show that its decision was supported by substantial evidence.[7] *Id.* "Just how far the administrative agency must go in setting forth subsidiary facts depends upon the case and the issues presented for determination."

---

6. Mr. Vivona also argues in his third point that the Board erred in rejecting the hearing officer's recommendation to reinstate. Because this is essentially the same argument he raises in his fourth point, we do not discuss it here.

7. We also note that non-probationary Kansas City Police Officers may only be terminated for cause whereas civilian employees do not enjoy this same statutory protection. *See* § 84.600 (termination for police officers must be for cause).

*Id.* at 244 (internal quotation marks and citation omitted). The facts need to be specific enough for the judiciary to carry out its role of review: "Without specific findings of fact on [controlling] issues, it is impossible to determine whether the action of the Board was supported by substantial evidence." *Webb v. Bd. of Police Comm'rs of Kansas City,* 694 S.W.2d 927, 929 (Mo. App. W.D.1985). We determined that the mitigating evidence surrounding Officer Holt's termination was a controlling issue because he was terminated for failing to follow an order and the reasonableness of the order he was asked to comply with was at issue. *Holt,* 965 S.W.2d at 243–45. We remanded because the Board had not set forth sufficient findings concerning the circumstances of the order. *Id.* at 245.

In the instant case, unlike in *Holt,* it was Mr. Vivona's noncompliance that was at issue, not the reasonableness of the policy. The basis for Mr. Vivona's termination was his failure to comply with the residency policy. The mitigating evidence noted by the hearing officer was that Mr. Vivona had sold one of his Lee's Summit homes and attempted to sell another. That Mr. Vivona belatedly made efforts to comply does not control whether there was substantial evidence to support the Chief's decision to terminate Mr. Vivona for noncompliance.

Section 84.500 grants the Chief statutory power to "promote, discipline, suspend or discharge" civilian employees of the police department. The Board retains final authority to review the Chief's decision to terminate and may "affirm, modify or reverse such action of the chief and … make such other orders as the board may deem necessary." § 84.610. Consequently, these personnel decisions are within the Department's discretion, provided it does not abuse that discretion. Because our review of the entire record shows that the Board's order affirming Mr. Vivona's termination for noncompliance with the residency requirement was supported by substantial evidence, and its findings were sufficient for us to carry out our role of review, its decision was not arbitrary, capricious, or unreasonable. *See Coffer,* 281 S.W.3d at 310. Mr. Vivona's third point is denied.

### *The Board's Rejection of Judge Moran's Reinstatement Recommendation*

In Mr. Vivona's fourth point on appeal, he contends that the Board acted unreasonably by rejecting Judge Moran's recommendation to reinstate after termination. He appears to contend that because we defer to a fact-finder's determination of credibility, we must give deference to the hearing officer's judgments rather than the Board's. We do not agree.

As previously mentioned, section 84.610 authorizes the Board to "affirm, modify or reverse" the Chief's action, as well as to "make such other orders as the board may deem necessary." It further provides that "[e]ach decision of the police board in such cases shall be final." In *Coffer,* in reference to section 84.600, which also contains this latter language, the Court noted that the section "specifically vests the board with authority to make the final determination." *Coffer,* 281 S.W.3d at 312. That the Board delegated the hearing of the facts and circumstances to a hearing officer does not remove its statutory authority for final decision-making. Moreover, Board Resolution 02–06, which establishes the procedure before a hearing officer, specifically reserves final-decision making to the Board. The resolution provides that the "recommendations of the hearing officer will be submitted to the Board for review and approval or disapproval. The decision by the Board will be de novo."

Additionally, in his written waiver, Mr. Vivona acknowledged understanding that the final decision would be made by the Board. Because the Board did not abuse its discretion or act contrary to the law in declining to reinstate him, Mr. Vivona's fourth point is also denied.

## Conclusion

For the aforementioned reasons, the decision of the Board terminating Mr. Vivona's employment is affirmed.

LOWENSTEIN, P.J. and WELSH, J. concur.