Edward M. MORELAND, Director Department of Justice Services St. Louis County, Missouri, Appellant,

v.

Donald W. PAULE, et al., Members of the Civil Service Commission of St. Louis County, Missouri, Respondents.

Nos. 44530, 44549 and 44564.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 18, 1983.

Peper, Martin, Jensen, Maichel & Hetlage by Richard E. Jaudes, Bradley S. Hiles, St. Louis, for appellant.

Thomas W. Wehrle, St. Louis County Counselor, Robert E. Britt, Sp. Asst. County Counselor, Clayton, for respondents.

Charles R. Oldham, St. Louis, for intervenor-respondent Ezzard Taylor.

SATZ, Judge.

Edward W. Moreland (Moreland) Director of the Department of Justice Services for St. Louis County terminated the employment of Jeffrey M. Kaufman (Kaufman) and Ezzard Taylor (Taylor), two corrections officers who worked at the St. Louis County Jail in Clayton, Missouri. Kaufman and Taylor appealed their termination to the St. Louis County Civil Service Commission (Commission). The Commission revoked the terminations and ordered that Kaufman and Taylor be reinstated with back pay. Moreland sought review of the Commission's order in the circuit court, naming the members of the Commission as defendants. Kaufman and Taylor intervened in the review proceeding, seeking affirmance of the Commission's order and also seeking attorney's fees. The court affirmed the order of the Commission but did not rule on the request for attorney's fees. Moreland appeals the circuit court decision and Taylor and Kaufman cross appeal for attorney fees.[1] We affirm the judgment of the circuit court and remand for a determination of attorney fees and expenses.

The Commission reversed Moreland's decision on the merits and on procedural grounds. On appeal, Moreland contests the validity of both grounds of the Commission's ruling. We address Moreland's attack on the merits underpinning the Commission's ruling. Disposing of this attack by Moreland disposes of his attack on the procedural grounds underpinning the Commission's ruling.

Under its rules, the Commission may revoke the dismissal of a Civil Service employee if it finds the dismissal to be inequitable.[2] On the merits, the Commission concluded "the terminations of ... Kaufman and ... Taylor are without just cause and the action of the Department of Justice Services is inequitable." Moreland argues this ruling was not supported by substantial evidence and was against the overwhelming weight of the evidence. We disagree.

In this appeal, we review the decision of the Commission not the decision of the trial court. We do not substitute our judgment on the merits for that of the Commission. "We merely determine whether the commission's ruling was supported by competent and substantial evidence and, if so, whether ... it was clearly contrary to the overwhelming weight of the evidence." *Heitzler v. Eppenberger,* 596 S.W.2d 458, 460 (Mo.App.1980). In doing so, we defer to the Commission's assessment of the credibility of witnesses and view the

---

1. The appeals of Kaufman and Taylor have been consolidated into Moreland's appeal.

2. "The Commission may affirm, modify or revoke the ... dismissal to any extent that in its judgment is equitable and will promote the efficiency of the county service." Commission Rule XVIII, § 2(c).

evidence in the light most favorable to the Commission's findings. *Id.* at 460; *Jones v. St. Louis Civil Service Commission,* 628 S.W.2d 691, 693 (Mo.App.1982).

█ Viewed in this light and distilled for pertinent facts, the record reveals that two inmates escaped from St. Louis County Jail while under the supervision of Kaufman and Taylor. At the time of the escape, Kaufman and Taylor were guarding inmates in the jail's gymnasium during a recreation period. The gymnasium has two sections, an exercise room and a handball court. Correction officers were not permitted to enter the handball court while inmates were in the gym area for fear of the officers being taken hostage. Activity of the inmates using the handball court was, therefore, to be monitored from the exercise room by looking through a viewport in the single door to the handball court. On the night of the escape, two inmates, Rutledge and Renner, went into the handball court ostensibly to play handball. Kaufman and Taylor were in the exercise room and began playing a game of dominoes with a third inmate. Kaufman and Taylor positioned their chairs so that they could see the door to the handball court through a mirror. They also monitored the activities of the handball players by listening for the noise generated by the handball game. After 15 to 20 minutes, Kaufman went to notify Rutledge and Renner the recreational period was over. He then discovered Rutledge and Renner had escaped. Rutledge and Renner had unscrewed some of the panels which made up the walls of the handball court, kicked through a drywall behind the panels, gained entrance to a hallway, broken a window in the hallway and escaped through the broken window.

County jail directives and departmental correspondence required that prisoners be closely supervised during recreation. Relevant to the quality of Kaufman's and Taylor's supervision, the evidence showed that Mr. Jones, a correctional officer who labeled himself an "institutional teacher," Mr. Breeding, Chief of Custody at the Jail, and Moreland all knew that, prior to this escape,

inmates had attempted to remove the wall panels in the handball court in apparent efforts to escape. Because of this knowledge, Moreland cautioned Breeding to tell his officers to be more vigilant in watching the handball court. However, Kaufman and Taylor were never informed of the possibility or probability of an escape through the wall of the handball court.

The jail directives and departmental correspondence also prohibited correctional officers from "recreating" and becoming "involved" with inmates. There was conflicting testimony defining the meaning of the terms "recreate" and "actual involvement." Kaufman and Taylor both understood the terms as forbidding participation in "physical" activities in the gym area. Jones, Kaufman's supervisor, interpreted the terms as permitting correction officers to engage in "physical" games such as ping-pong and basketball but no "non-physical" games such as dominoes. The various interpretations of this "regulation" notwithstanding, correction officers regularly participated in both "physical" and "non-physical" activities with inmates in the gym area. According to the uncontradicted testimony of Kaufman, Taylor, Jones and another correction officer, Armstrong, correction officers routinely engaged in such activities as weightlifting, basketball, volleyball, foosball, ping-pong and dominoes with inmates in the gym area. Even Breeding and Moreland admitted that such activities occurred.

Moreland argues, however, that prior attempts to escape from the handball court and violations of the regulations by other officers are irrelevant to the issues here. The evidence shows, Moreland, contends, that Kaufman and Taylor did violate regulations, and, Moreland argues, these violations warranted dismissal. Without agreeing with Moreland, we will assume Kaufman and Taylor violated their duties. Dismissal for these violations, however, is not compelled nor even supported by the record.

Failure to inform Kaufman and Taylor about prior attempts to escape from the handball court and violation of regulations

by other officers, arguably, may be irrelevant to deciding whether Kaufman and Taylor breached their respective duties. These facts, however, are relevant in determining whether dismissal was an equitable punishment for the breach of duties. Since fellow officers honored the regulations in issue more in the breach than in the observance, dismissal of Kaufman and Taylor for breach of these regulations is a questionable rather than appropriate remedy. More important, prior to the escape in issue, there were sixteen successful escapes of one or more inmates from the county jail facilities in Clayton and Gumbo. According to Moreland, disciplinary measures in those escapes ranged from "letters of caution" to short suspensions. No one was ever discharged as a result of an escape. One individual was dismissed for an overall poor work record which included negligence in one escape. In addition, Moreland followed the principle of progressive discipline in punishing correction officers for violations of duties. The record does not disclose any prior reprimands, suspensions or demotions of Kaufman or Taylor. On the contrary, Kaufman was considered to be an excellent correction officer and Taylor was noted as exceeding his job requirements. Under the circumstances here, we find substantial evidence to support the Commission's conclusion that the dismissals of Kaufman and Taylor were inequitable.

The Commission also found that Kaufman and Taylor were not offered the kind of pre-termination hearings required by their due process rights. Moreland also attacks this finding. We do not address the issues raised by this attack. We have found the Commission properly revoked the dismissals of Kaufman and Taylor. Thus, any violation of Kaufman's and Taylor's due process rights resulting from the way Kaufman and Taylor were dismissed would not work any prejudice against them.

Moreland also contends that Kaufman's notice of appeal to the Commission was not timely filed and, therefore, Moreland reasons, the Commission did not have jurisdiction to consider Kaufman's appeal. Kaufman, naturally, counters this argument.

Without detailing Kaufman's arguments at this point, we find that Kaufman prevails for reasons different than those urged by Kaufman.

The Commission's rule governing the filing of appeals provides that:

"Any permanent employee . . . dismissed, may appeal from such action by filing a written request for a hearing and a written answer to the charges made against him with the Commission within ten calendar days after receiving written notice of . . . dismissal." [Commission Rule XVIII, § 2(a)(1)].

On December 31, 1980, Moreland handed a letter to Kaufman notifying Kaufman he was "being" dismissed and stating "[t]his dismissal is effective January 9, 1981." According to Moreland's allegations in his "Petition for Review" filed in the trial court, "a telegram was received . . . on January 9, 1981" by the Commission from Kaufman's attorney "demanding 'a full and public hearing before the'" Commission, and, on January 12, 1981, "a letter of Appeal was received from" Kaufman's attorney. In Kaufman's "Response to [Moreland's] Petition For Review," he "denied" these allegations of Moreland and, then, alleged he filed "a Notice of Appeal regarding the termination on January 9, 1981," both by "telegram and by the mailing of a Registered Letter to the . . . Commission requesting an appeal." He also alleged "[t]he Registered Letter was received by the Commission on January 12, 1981."

As noted, the "notice" of dismissal given to Kaufman on December 31, 1980, stated the dismissal was not "effective" until January 9, 1981. Both Moreland and Kaufman, however, apparently assume the former date rather than the latter date triggered the ten-day period for Kaufman's filing his notice of appeal to the Commission. Thus, they both conclude the deadline for Kaufman's filing his notice of appeal was January 10, 1981. In addition, they both apparently assume the record supports their respective allegations in the "Petition for Review" and in the "Response to the Petition

for Review." Based upon these assumptions, Moreland and Kaufman make their arguments to us.

Moreland contends the Commission's ten-day requirement for filing the appeal to the Commission is jurisdictional. Kaufman does not disagree.[3]

Moreland then contends Kaufman's request for hearing was filed when received by the Commission, on January 12, 1981, two days late. Kaufman counters that his request was filed when mailed by registered mail, on January 9, 1981, one day early. Neither of these contentions, however, are supported by the present record. The record does not disclose the timing, form or substance of what was mailed by Kaufman or of what was received by the Commission. Admittedly, in their Petitions before the trial court, Moreland and Kaufman allege part of this information, but these allegations are not self-proving and are not consistent with one another.[4] Thus, neither of these contentions are persuasive.

Another contention made by Kaufman rests on the applicability of our Supreme Court Rule 44.01(a). January 10, 1981, the assumed deadline for Kaufman filing his appeal with the Commission, fell on a Saturday. When the final day for performing an act falls on a Saturday, Sunday or a holiday, the time for performing the act is extended to the next day which is not a Saturday, Sunday or holiday. Rule 44.01(a). Kaufman contends the deadline for filing his appeal was extended by Rule 44.01(a) from Saturday, January 10, 1981, to Monday, January 12, 1981, the day Moreland alleges in his Petition that Kaufman's appeal was received. Kaufman's reliance on Rule 44.01(a) is misplaced. Our courts have held that Rule 44.01(a), specifically, and have stated that Rule 44.01, generally, only apply "to civil actions in judicial courts" and do not apply to administrative proceedings. *City of St. Louis v. Director of Revenue,* 654 S.W.2d 118, 122 (Mo.App. 1983); *Cardinal Glennon Memorial Hosp. v. Director of Revenue,* 624 S.W.2d 115, 118 (Mo.App.1981); *See, Springfield Park Central Hosp. v. Director of Revenue,* 643 S.W.2d 599, 600 (Mo.1983); *R.B. Industries, Inc. v. Goldberg,* 601 S.W.2d 5, 7 (Mo. banc 1980).[5] Thus, this contention is also not persuasive.

---

**3.** "In Missouri the failure to comply with the statutory time for an appeal [in an administrative proceeding] results in lapse of jurisdiction and right of appeal." *Springfield Park Central Hospital v. Director of Revenue,* 643 S.W.2d 599, 600 (Mo.1983).

**4.** After examining the record, including all exhibits, we asked the parties whether they could stipulate to the following facts:

1. Kaufman's request for hearing was mailed to the Civil Service Commission by registered mail.
2. Kaufman's request for hearing was mailed on January 9, 1981.
3. Kaufman's request for hearing was received by the Commission on January 12, 1981.

They could or would not so stipulate.

The Commission rules do not define the term file. Usually, a paper is filed in a public office the day it is received in that office. *E.g., Euge v. Golden,* 551 S.W.2d 928, 931 (Mo.App.1977) (court); *Tabb v. McGinley,* 313 S.W.2d 745, 747 (Mo.App.1958) (administrative agency). Based upon the present record, we do not reach the question of whether the usual definition of filing or an exception to that definition applies here. *See* § 161.350 RSMo (pleadings mailed by registered mail to our state Administrative Hearing Commission are deemed filed on the date mailed. This state Commission performs functions essentially the same or similar to the functions performed by the Commission here).

**5.** The genesis for limiting the reach of Rule 44.01(a) is found in the *Goldberg* case, *supra.* In *Goldberg,* the Court rejected the use of Rule 44.01(e) to extend the time for filing an appeal from an administrative hearing to a circuit court. Rule 44.01(e) adds three days to the time for performing an act, when the notice triggering the need for performing the act is given by mail. In *Goldberg,* the Court's conclusion is based upon a rationale used by the federal courts, which distinguishes the processing of a statutory right from the processing of a common law right. *See Whipp v. Weinberger,* 505 F.2d 800, 801 (6th Cir.1974) and cases collected therein. These federal courts reason that:

"[W]here a statute creates a right, ... unknown to the common law and limits the time within which the right must be asserted, the limitation defines and controls the right and the right ceases to exist if not asserted within the time fixed in the statute ...."

Moreland's attack on the Commission's jurisdiction, however, is resolved by the state of the record. We take the record as we find it. The issue of jurisdiction was raised before the Commission and the Commission found it had jurisdiction. This is a presumptively valid finding. *E.g., Wallace v. Hankins,* 606 S.W.2d 443, 444 (Mo.App. 1980). In attacking this finding on appeal, Moreland has the burden of providing the evidentiary record to support his attack. *See, Id.* at 444; *See also State v. Brown,* 654 S.W.2d 290, 291 (Mo.App.1983). He has failed to do so. Without evidentiary support, his attack is without merit.[6]

For the foregoing reasons, we affirm the order of reinstatement.

Kaufman and Taylor have filed cross-appeals for attorney's fees and expenses. The order of the court below, however, is silent on the issue of attorney's fees and expenses. With no disposition of this issue, we normally would dismiss these cross-appeals as premature. *Bays v. Lueth,* 323 S.W.2d 236, 237 (Mo.1959). We note that when the request for attorney's fees is one of several issues raised in a motion to modify a dissolution decree, this Court, without citation or discussion, has held the failure of the trial court to grant the request for attorney's fees, while disposing of the other issues, constitutes a denial of attorney's fees. *Pot-*

*ter v. Desloge,* 625 S.W.2d 927, 929 (Mo. App.1981). However, we do not need nor choose to follow the holding and teaching of the *Desloge* case here. For judicial economy, our Supreme Court has concluded we have jurisdiction to resolve the issue of attorney's fees and expenses as an incident to the issues of the reinstatement of and lost salary due a public employee. *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138, 147–148 (Mo. banc 1974). Thus, we do consider this issue in this consolidated appeal.

Under the Commission's order, Kaufman and Taylor are to be reinstated and reimbursed for lost salary from the date of termination to reinstatement, "less deductions for any income received by [them from the date of termination to reinstatement] from both private and public employment or from unemployment benefits." In determining the amount by which the lost salary should be mitigated, credit is given for reasonable attorney's fees and expenses incurred in vindicating the right to reinstatement. *Wolf v. State Training School for Boys, supra* at 147–148. Thus, Kaufman and Taylor are not entitled to an award of attorney's fees separate from and in addition to their reimbursement for lost salary; "[r]ather [they are] entitled to have those fees and any reasonable and neces-

*Ewing v. Risher,* 176 F.2d 641, 644 (10th Cir.1949).
Thus, insofar as a statutory right is concerned, these federal courts and our Supreme Court do not distinguish between substance and process and, in effect, construe the time for processing a statutory right as a substantive element of that right. *See, dissent, Rendlen, J., R.B. Industries, Inc. v. Goldberg, supra* at 7–8.
*Goldberg* was followed by the Western District stating, in *Cardinal Glennon,* that Rule 41.01, listing the courts to which Rules 44.01 through 101 apply, necessarily excludes Rule 44.01 from applying to "proceedings still administrative." *Cardinal Glennon Memorial Hosp. v. Director of Revenue, supra* at 181. Then our Supreme Court in *Springfield Park,* construing the applicability of Rule 44.01(e) to administrative proceedings, stated: "In a similar situation we held Rule 44.01 applies to civil actions in judicial courts and is not applicable to administrative proceedings." *Springfield Park Hosp. v. Director of Revenue, supra* at 600.

**6.** As previously noted, Moreland did allege in his "Petition For Review," that, on January 9, 1981, one day before the assumed deadline for filing an appeal, the Commission received a telegram from Kaufman's attorney "demanding 'a full and public hearing before'" the Commission. We do not address the evidentiary effect of these allegations because, in his "Response," Kaufman denied them. Moreover, the sufficiency of the contents of the telegram, as alleged, is not properly before us. As part of the procedural requirements for perfecting an appeal to the Commission, the Commission requires both "a written request for a hearing and a written answer to the charges made against [the employee]." In his brief, Kaufman did not argue that the contents of the telegram, as described in Moreland's allegations, met both of these procedural requirements. Thus, Moreland had no need to and did not address the procedural sufficiency of the contents of the telegram. As a result, this issue was not joined before us.

sary expenses incurred in connection with this lawsuit credited against the amount of income that the Commission determine[s] [they] earned or should have earned" between the time of their termination and reinstatement. *Stovall v. Civil Service Commission of the City of St. Louis,* 636 S.W.2d 364, 368 (Mo.App.1982); *Wolf v. Missouri State Training School for Boys, supra* at 147–148 (Mo. banc 1974); *Stewart v. Board of Education of Ritenour Consolidated School District, R–3,* 630 S.W.2d 130, 136 (Mo.App.1982).

Accordingly, while we affirm the present judgment of the trial court, we remand this cause to that court with the direction to amend its judgment by ordering the Commission to conduct a hearing to determine the lost salary due Kaufman and Taylor as well as the amount of reasonable attorney's fees and expenses to be credited under the procedure outlined in the cases cited above.

SMITH, P.J., and PUDLOWSKI, J., concur.