Faye BATES, Plaintiff-Respondent,

v.

CITY OF ST. LOUIS, et al.,
Defendants-Appellants.

No. 51129.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 17, 1987.

Motion for Rehearing and/or Transfer
Denied March 19, 1987.

Application to Transfer Denied
May 19, 1987.

Kathleen A. Gormley, Asst. City Counselor, St. Louis, for defendants-appellants.

Charles W. Bobinette, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Defendant City of St. Louis appeals from a circuit court order that directs it to reinstate plaintiff Faye Bates as a tenured city employee with back pay.[1] We affirm.

On January 25, 1979, defendant hired plaintiff as a clerk typist and assigned her to the Traffic Violations Bureau of the Department of City Courts. Plaintiff's duties included answering the telephone, writing bonds, cashiering, and entering traffic violations data into a computer bank. The latter task required proficiency on a cathode ray terminal (CRT), which is a data processing machine with a typewriter keyboard. Plaintiff, having had two years of typing in high school, was able to demonstrate the required proficiency. She eventually earned tenure and was reclassified a Data Entry Operator I.

In late December 1982, plaintiff's appointing authority, Venetta Barbaglia, conducted an inquiry into allegations that plaintiff had either voided or added dispositions to her own parking tickets. Plaintiff denied misconduct and produced five checks drawn on her account as evidence that the tickets had been duly paid. Barbaglia concluded the evidence did not warrant plaintiff's dismissal. She reprimanded plaintiff, however, for failing "to follow proper departmental procedures."

Plaintiff assumed the reprimand was the Department's final action on the matter. On January 18, 1983, however, she was told she was being transferred to the Department of Health and Hospitals, for "disciplinary reasons". Plaintiff complied with the transfer order under protest and appealed to the Civil Service Commission. The Commission denied the appeal summarily.

Plaintiff began work at City Hospital on March 8, 1983. She retained her Data Entry Operator I classification and was, as before, assigned the task of entering data into a computer bank. At City Hospital, however, data entry operators were required to use keypunch machines. Because plaintiff was not a trained keypunch operator, she requested a transfer. Her request was denied.

Despite her lack of formal or on-the-job training as a keypuncher, plaintiff within nine months had increased her production from about 2000 keystrokes per hour to about 5000 keystrokes per hour. The department standard, however, was 12,500. On February 6, 1984, the hospital's data processing manager issued to plaintiff a letter which stated in part, "while you have made some progress in your rate of data entry, your performance seems to have leveled off at the 5,000–6,000 strokes per hour rate. In order to be considered as meeting the standards for continued employment, it will be necessary that you demonstrate ability to enter data at the rate of at least 10,500 strokes per hour by April 6, 1984......If you fail to reach this level, you will be terminated from your position."

On April 5, 1984, plaintiff's stroke level was 4,000 to 6,000 strokes per hour. On April 13, 1984, a pretermination hearing was held. Plaintiff received notice of termination on April 26 or 27. Plaintiff appealed her discharge to the Civil Service Commission. The Commission conducted an evidentiary hearing and, on October 5,

---

1. Plaintiff moves to dismiss the appeal for failure to file timely notice. The record, she asserts, shows defendant filed its notice on February 25, 1986, one day late. The record also shows, however, that defendant successfully moved the circuit court to correct the Notice of Appeal nunc pro tunc to reflect a filing date of February 19, 1986. We therefore find notice was timely filed and deny plaintiff's motion to dismiss.

1984, affirmed City Hospital's decision to dismiss plaintiff. In so doing, the Commission determined CRT operating and key-punching require similar skills; and, though plaintiff was given sufficient time and assistance to meet the department's production standards, she had failed to do so.

On November 5, 1984, plaintiff filed a two-count petition in the circuit court. In Count I, she invoked § 536.100, RSMo 1978, requesting judicial review of the Commission's decision to affirm her discharge. In Count II, a § 536.150, RSMo 1978 petition for writ of certiorari, she requested judicial review of her allegedly involuntary, punitive transfer from City Courts to City Hospital. In each count, she prayed for reinstatement to her position at City Courts, or to a comparable position performing CRT functions, with full back pay to the date of reinstatement. After plaintiff and defendant presented their evidence, the circuit court granted plaintiff the relief she sought.

■ In its first point, city challenges the circuit court's jurisdiction to entertain plaintiff's petition for writ of certiorari. Its argument, as we understand it, is this: (i) plaintiff's petition for writ of certiorari alleges the Commission affirmed her transfer without affording her a hearing; (ii) with the assertion that she was entitled to a hearing, plaintiff implicitly concedes the matter of the lawfulness of her transfer is a "contested case"; (iii) statutory certiorari will not lie in a "contested case"; (iv) the circuit court therefore lacks jurisdiction to entertain plaintiff's petition.

Defendant's argument, though superficially appealing, mischaracterizes plaintiff's position. Plaintiff does not assert she was entitled to a hearing on the lawfulness of her transfer. Rather, she asserts the transfer, because it was punitive, was unlawful per se. Specifically, in her petition she alleges her "appointing authority and the Commission in affirming the transfer exceeded its jurisdiction and authority, *in that said transfer was a disciplinary action* in violation of Civil Service Rule IX." (Emphasis added). Plaintiff does not

assert she had a right to a hearing on the lawfulness of her transfer, and thus does not claim the matter of her transfer is a "contested case". We therefore reject defendant's contention that statutory certiorari does not lie. § 536.150.2, RSMo 1978.

■ Turning to the merits of plaintiff's petition, we find we must reject the contention that disciplinary transfers are unlawful per se. Rule IX's section 7, pertaining to transfers, provides in part that "[a]ny transfer from a position in a higher class to a position in a class carrying a lower maximum salary shall be deemed a demotion, and may be effected only in the manner provided in these rules for making demotions." Thus the Rule contemplates disciplinary transfers, though it mandates certain procedural safeguards be observed.

■ Nevertheless, we believe the circuit court's decision on the merits of plaintiff's petition for statutory certiorari was correct. Rule IX's Section 7, also provides that "[t]ransfer of a classified employee from a position under the jurisdiction of one appointing authority to a position under the jurisdiction of another appointing authority may be made ... provided the positions are in the same class or a similar class requiring no additional or different tests of fitness." The record before the circuit court was replete with evidence that though plaintiff's designation as a Data Entry Operator I did not change when she was transferred, she was in fact required to meet "additional or different tests of fitness" at her new job. For example, among defendant's exhibits is a June 8, 1983, memorandum from City Hospital's data entry supervisor to the hospital's data processing manager that reads:

After allowing what I consider adequate time for adjusting to working in a different environment, gaining experience on a keypunch keyboard, and learning how data was processed in my department, I began to keep status reports on Mrs. Faye Bates.

As of June 2, 1983, Mrs. Bates cannot key on a production basis. For a period of sixteen days her keystrokes remained approximately the same.

Speed and accuracy are a must in the Data Entry Department.

*Mrs. Bates is an experienced CRT operator and not a Data Entry Operator. There is a vast difference between the two.*

(Emphasis added).

The record establishes that upon receiving the above memorandum and reviewing plaintiff's performance, the hospital's data processing manager determined plaintiff had been misclassified, and that her proper designation was CRT Operator, not Data Entry Operator. Upon this evidence the circuit court could properly have found plaintiff's transfer violated Rule IX, Section 7.[2]

■ In its remaining point defendant asserts the circuit court exceeded its authority when it reversed the Commission's decision to affirm plaintiff's discharge. We disagree. Judicial review of administrative action may properly extend to whether the action is supported by competent and substantial evidence. § 536.140.2(3), RSMo Cum.Supp.1984. We believe the circuit court correctly determined the Commission's action lacked the requisite evidentiary support.

Plaintiff was discharged from her position at City Hospital ostensibly because her performance as a keypuncher was consistently substandard. Evidence that plaintiff's keypunching was in fact substandard is abundant and uncontradicted. That plaintiff was not a trained keypuncher, however, is also undisputed, and that she should not even have been classified a Data Entry Operator I is established by defendant's own evidence. Plaintiff's supervisor, moreover, testified that she herself, with six months formal keypunch training and above average ability, achieved a stroke level of 10,500 only after one year on the job. Plaintiff was expected to reach the same level of proficiency after one year on the job and no formal training.

We, of course, review the record in this case only to determine whether the Commission's action is supported by competent and substantial evidence, whether it is arbitrary, capricious or unreasonable, or whether the Commission abused its discretion. *Jarrett v. Hill,* 648 S.W.2d 170, 172 (Mo.App.1983). The uncontradicted evidence, however, compels the conclusion that plaintiff's failure to meet City Hospital's standards was occasioned by defendant's own act of transferring her to a position she was not trained to perform. The record shows plaintiff was a competent CRT operator, not a keypuncher. We will not fault the apple tree for failing to bear oranges.

■ We affirm the order of reinstatement. However, because damages have yet to be calculated, we remand with directions to the circuit court to order the Commission to conduct a hearing to determine what compensation plaintiff is due. The circuit court shall instruct the Commission to (i) determine the amount of back pay (gross damages) plaintiff is due, (ii) determine the amount of money plaintiff has earned, or reasonably could have earned, since her unlawful termination, (iii) deduct the latter amount from the former, after reducing the latter by the expenses and attorney's fees plaintiff has incurred. Any excess of expenses and attorney's fees over what plaintiff earned or could have earned shall be disregarded and may not be used to increase the damages award. See *Stovall v. Civil Service Commission of the City of St. Louis,* 636 S.W.2d 364, 368 (Mo.App.1982).

The order of reinstatement is affirmed; the matter is remanded for proceedings consistent with the foregoing.

GARY M. GAERTNER, P.J., and SIMON, J., concur.

---

**2.** Alternatively defendant asserts laches should bar the relief plaintiff seeks. Laches, however, is an affirmative defense. If it is not pleaded, it is waived. Rule 55.08; *Brunswick Corp., Mercu-* *ry Marine v. Hering,* 619 S.W.2d 950, 954 (Mo. App.1981). Defendant did not plead laches in the circuit court. We will not consider the defense on appeal. *Id.*