James **MORGAN**, Plaintiff/Cross–Appellant,

v.

**CITY OF ST. LOUIS, et al.,**
**Defendants/Respondents.**

No. ED 84267.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 21, 2004.

Charles W. Bobinette, St. Louis, MO, for appellant.

Patricia A. Hageman, Carl W. Yates III, St. Louis, MO, for respondents.

LAWRENCE G. CRAHAN, Judge.

The City of St. Louis ("City") and its Civil Service Commission ("Commission") appeal the judgment reversing the decision of the Commission upholding dismissal of Captain James Morgan ("Morgan") for violation of a City drug policy and reinstating him to the St. Louis Fire Department ("Department"). The circuit court ruled that the finding of the Commission that Morgan had tested positive for drugs after completing a random drug test was not supported by substantial and competent evidence. Morgan cross-appeals from the circuit court's denial of his motion to remand the case to the Commission to calculate the amount of back pay, interest, and benefits due to him for the wrongful termination of his employment. We affirm the judgment of the circuit court as modified with directions to remand to the Commission to calculate the amount of back pay and any other benefits Morgan lost as a result of his wrongful termination, together with interest as provided by law.

■ Our scope of review is limited to a review of the administrative ruling and not the decision of the circuit court. *Lagud v. Kansas City Bd. of Police Comm'rs*, 136 S.W.3d 786, 791 (Mo. banc 2004). Pursuant to article V, section 18 of the Missouri Constitution we are to determine whether the agency's action is "supported by competent and substantial evidence upon the whole record." Under section 536.140.2,[1] when the court reviews the record to determine if the findings of the agency are supported by substantial and competent evidence, the court must look to the whole record and not merely the evidence that supports the decision. *Lagud,* 136 S.W.3d at 791. Thus, a reviewing court is no longer required to view the evidence in a light most favorable to the agency's decision. *Id.* For evidence to be substantial, it must be competent and support the Commission's discretionary determination. *Mertzlufft v. Civil Service Comm'n,* 85 S.W.3d 63, 66 (Mo.App.2002). Substantial evidence is competent evidence that would have probative force upon the issues if believed. *Id.*

The evidence before the Commission showed the following. Morgan has been a member of the Department since 1978. In 1990, he became the first from his class to be promoted to Captain. A lifelong resident of St. Louis, Morgan has received numerous awards and distinctions including the "Meritorious Service Award," the "Departmental Image Award" and "Firefighter of the Year." St. Louis City Fire Chief Sherman George and two Battalion Chiefs attested to Morgan's work ethic and good character. He served in many voluntary positions over the years, including working to increase public education about fire safety. He has been tested numerous times for drugs and always passed.

In April 2002, Morgan sought further promotion within the Department. As part of the promotion process, the Department required Morgan to submit to drug testing. On April 11, he was selected for random drug testing and was required to provide urine samples at BJC Health Ser-

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

vices. Four days later, Morgan was informed that he had tested positive for carboxy—THC, the marijuana metabolite. Except for inhaling smoke during a fire a week or so before the test or a mistake in the collection or testing processes, he could not think of a reason for a positive test result. As was his right under City of St. Louis Department of Personnel Administrative Regulation No. 120 ("Regulation 120"), Morgan requested that his split sample [2] be tested by an independent laboratory, MedTox. MedTox confirmed the presence of the marijuana metabolite in the specimen, but the results were not quantified and there was no indication whether or not the presence of the marijuana metabolite reached or exceeded the cut-off level for a positive test under the guidelines adopted by the City in Regulation 120.

A pretermination review hearing was called, and Morgan appeared before a three-member Fire Department Review Board ("Board") in May 2002 to respond to the allegations of drug use. Morgan denied that he had used marijuana, and in his defense he produced the results of an additional independent drug test and a polygraph examination conducted at his expense. The Board felt that it had no other option but to recommend Morgan's termination to his Appointing Authority,[3] Chief George. Morgan offered to submit to an additional independent polygraph test, but his offer was refused. The Appointing Authority believed he had no discretion and was required to terminate Morgan because of the positive drug test,

so Morgan was terminated for violating the City's drug policy regulations.

Morgan then appealed to and requested a hearing by the Commission. Hearings were held in August 2002 before a hearing officer. Morgan moved the Commission to order the urine sample to be provided to a DNA expert for testing prior to the introduction of evidence and briefed the Commission on this issue at the close of the evidence, but no action was taken.

The keeper of records at BJC testified for the Department as to the records regarding the specimen collected from Morgan, records of the delivery of a specimen to MedTox, and a computer-generated laboratory report. The Department did not introduce any evidence concerning the chain of custody of the split sample. Dr. Kammerer, the Director of Toxicology at the Clinical Reference Laboratory that performed the first test, testified, based on the records of his lab and identified the sample bottle. Although Dr. Kammerer did not personally perform the drug test, he described the testing process, including the possibility of false positives, especially when lower levels of the drug are found to be present in a specimen. Dr. Kammerer noted that the initial specimen, tested by the Clinical Reference Laboratory, was found to contain 25 nanograms per milliliter (ng/mL) of the marijuana metabolite upon confirmation testing. Dr. Kammerer stated that if the donor had drank a glass of water before the specimen was given, it

---

2. The original specimen is initially divided into two separate vials in the presence of the employee prior to testing. The first sample is screened to determine the presence of drugs in an employee's system. If the test is positive upon confirmation testing, the employee may request that the split sample be provided to an independent certified laboratory for additional analysis.

3. The Appointing Authority is the person, here the Fire Chief, having the power to make appointments to any position in the city service under his control. The Appointing Authority is charged with deciding disciplinary matters for the City over its firefighters, subject to review by the Commission.

very possibly would have been below the cutoff level.

A positive drug test that would result in the dismissal of a City employee is defined in Regulation 120 as "a test result that confirms the presence of drugs or drug metabolites at the level that equals or exceeds the limits established by the United States Departments of Transportation and Health & Human Services." Under the federal regulations in effect here at all relevant times, the cutoff concentration for a confirmation drug test of marijuana was 15 ng/mL.

Dr. Kammerer also identified records showing the split sample was sent to Med-Tox. There was no evidence from Dr. Kammerer or from anyone at the MedTox lab showing the receipt of the split sample by MedTox. The records do show, however, that a split sample was sent from the Clinical Reference Laboratory to MedTox, and MedTox reported back its test results on the split sample. The records of both companies indicate that the sample had the same patient identification number associated with Morgan. The report from Med-Tox, admitted over Morgan's objection to the lack of foundation, confirmed the presence of the marijuana metabolite, but it did not quantify the results or otherwise report whether it equaled or exceeded the cutoff concentration of 15 ng/mL specified by Regulation 120 as constituting a positive drug test.

Morgan testified on his own behalf. The hearing officer sustained City's objection to the introduction of the independent polygraph examination report on the basis of relevancy. At the end of the hearings, the hearing officer prepared a written report that was delivered to the Commission.

By a vote of 2–1, the Commission upheld the termination of Morgan's employment and denied his request for DNA testing. Morgan then filed a petition for judicial review of the Commission's decision with the circuit court. The circuit court reversed the decision of the Commission and reinstated Morgan to his former position as Captain in the Department. The circuit court ruled that the City did not provide substantial and competent evidence of the chain of custody of the split sample, the validity of the testing procedures used by MedTox, or the condition of the split sample when received by MedTox. Although the MedTox lab report confirmed the presence of the marijuana metabolite, it did not quantify the results or otherwise report whether it equaled or exceeded the criterion for a positive drug test under the regulations adopted by the City. Accordingly, the court found that the finding of the Commission that Morgan had violated the City's drug policy was not supported by competent and substantial evidence.

The circuit court entered its order restoring Morgan to the rank of Captain with the Department on December 23. This judgment was silent with respect to Morgan's back pay. On January 20, 2004, the City filed its notice of appeal. Morgan subsequently filed a motion to amend the judgment by remanding the cause to the Commission for the purpose of calculating his back pay, plus interest, and lost benefits. The circuit court refused to amend, stating that it had no jurisdiction to amend judgment since the notice of appeal was previously filed. On March 2, Morgan filed his own notice of appeal and cross-appealed in order to ensure his right to the remedy of appellate review of the trial court's refusal to amend the judgment to include back pay and interest.[4]

4. In an order dated June 7, 2004, this Court denied the City's motion to dismiss Morgan's

appeal and ruled that the trial court in fact had jurisdiction to consider the merits of the

On appeal, Morgan asserts six points of error. In his first point, Morgan claims the Commission erred in upholding his termination from City service because its finding that he tested positive for the marijuana metabolite is unsupported by competent or substantial evidence because: (1) no evidence was offered to establish the qualifications, training or experience of the employees of Clinical Reference Laboratory who performed the test on the initial urine sample; and (2) no evidence was offered to establish the chain of custody of the split sample, its condition when received by MedTox, the validity of MedTox's testing procedures, or the cutoff levels used by MedTox Laboratory. We find it unnecessary to address the qualifications and chain of custody issues because MedTox's failure to quantify the level of the marijuana metabolite detected is dispositive of the appeal.

■ As discussed above, Morgan was terminated from his position pursuant to the City's Regulation 120, which mandates the dismissal of employees who test positive for drugs. Regulation 120 further specifies that a "positive drug test" is "a test result that confirms the presence of drugs or drug metabolites at the level that equals or exceeds the limits established by the United States Departments of Transportation and Health & Human Services." Regulation 120 (emphasis added). At all relevant times, that level was 15 ng/mL.

The level of the marijuana metabolite that was confirmed to be present in the first sample tested by Clinical Reference Laboratory was 25 ng/mL, which exceeds the threshold set forth under Regulation 120 for a positive drug test. However, Regulation 120 also grants City employees the right to have the split sample tested by a second, independent laboratory if the

employee makes the request within 72 hours after notification of a positive test result. Morgan timely requested independent testing of his split sample, which was forwarded to MedTox with instructions to test the sample "to the level of detection." This is not the criterion specified in Regulation 120. MedTox provided the City with a report indicating that the split sample tested positive for the marijuana metabolite "to the limit of detection," which likewise is not the criterion specified in Regulation 120. Because the MedTox report does not reveal the level of the marijuana metabolite detected, it does not constitute a "positive drug test" as defined in Regulation 120.

■ The Appointing Authority had the burden of proving that Morgan tested positive for drugs as defined in Regulation 120. Although the testing of the initial sample can constitute substantial and competent evidence if the employee does not timely request independent testing of the split sample, we find that if an employee does timely request independent testing of the split sample, Regulation 120 imposes upon the Appointing Authority the additional burden of establishing that the split sample also meets the criteria specified for a "positive drug test." To hold otherwise would render the employee's right to request independent testing of the split sample meaningless.

Because the City did not provide substantial and competent evidence that the split sample tested by MedTox met the criteria specified in Regulation 120 for a "positive drug test," the Commission's determination that Morgan violated Regulation 120 is likewise not supported by substantial and competent evidence. Accordingly, the circuit court's judgment ordering Morgan reinstated to the position

motion to amend the judgment and that Morgan's notice of appeal was timely filed.

of Captain is affirmed. In view of this determination, we need not address Morgan's remaining points alleging error by the Commission.

■ In his cross-appeal, Morgan claims the circuit court erred in failing to remand the case to the Commission to determine the amount of back pay, interest and benefits to which he was entitled by reason of his wrongful termination. The City claims that Morgan is not entitled to back pay or other benefits because he failed to present any evidence of the amounts due at the hearing before the Commission. We disagree. The amount of back pay, interest and benefits due is not in issue and is not susceptible to proof unless and until the Commission orders reinstatement.

■ Missouri law is clear that an employee who is wrongfully terminated is entitled to reinstatement with full back pay. *See, e.g., Stovall v. Civil Service Comm'n of City of St. Louis,* 636 S.W.2d 364, 367–68 (Mo.App.1982). An improperly dismissed public employee is entitled upon reinstatement to recover his lost back pay from the date of termination to the date of his reinstatement. *See Edmonds v. McNeal,* 596 S.W.2d 403, 408 (Mo. banc 1980). The employee should be reimbursed for lost salary from the date of termination to reinstatement minus any deductions for income received during that time from both private and public employment or from unemployment benefits. *Moreland v. Paule,* 659 S.W.2d 609, 614–15 (Mo.App.1983). In determining the amount by which the lost salary should be mitigated, credit is also given for reasonable attorney's fees and expenses incurred in vindicating the right to reinstatement. *Id.* If the Commission determines that Morgan was paid unemployment benefits or wages subsequent to his termination, then such sums should be reduced by the expenses and attorney's fees Morgan has

incurred. *See Bates v. City of St. Louis,* 728 S.W.2d 232, 235 (Mo.App.1987). Any excess expenses and attorney's fees over what Morgan earned or should have earned shall be disregarded and may not be used to increase the damage award. *Id.* Thus, Morgan is not entitled to an award of attorney's fees in addition to his reimbursement for lost salary, but he is entitled only to have those fees and any reasonable and necessary expenses incurred in connection with this lawsuit credited against the amount of income that the Commission determines he earned or should have earned between the time of his termination and reinstatement. *See Moreland,* 659 S.W.2d at 614–15.

We affirm the judgment of the circuit court as modified and remand with directions to order the Commission to determine the amount of back pay, calculated as set forth above, seniority, and any other benefits Morgan lost as a result of his wrongful termination, together with interest as provided by law.

LAWRENCE E. MOONEY, P.J., and MARY K. HOFF, J., concur.