SHERRI B. SULLIVAN, P.J.
Introduction
Stephen Brown (Appellant) appeals from the trial court's judgment affirming the decision of the City of St. Louis Civil Service Commission (the Commission) affirming Appellant's dismissal from employment by the City of St. Louis Streets Department, Towing Services Division (Towing Division), effective December 30, 2014. We affirm.
Factual and Procedural Background
Appellant was a Towing Services Foreman with the Towing Division from March 15, 2010, until December 30, 2014. The Manager of the Towing Division had issued a directive that unauthorized persons were not to be permitted on the tow lot after 6 p.m. on weeknights and 12:30 p.m. on Saturdays. A memo dated January 17, 2013, prohibiting non-employees from being on the tow lot during non-business hours was posted on a bulletin board inside the main office of the tow lot. Non-business hours are before 9 a.m. and after 6 p.m.
The Commission found Appellant was working as the third shift supervisor foreman of the tow lot beginning at 9:30 p.m. on October 15 and ending at 5:30 a.m. on October 16, 2014. Appellant was stationed inside the tow lot's office building where his duties included answering calls from the police and the public, dispatching tow truck drivers, and opening and closing the two electronic gates that provide sole access to the tow lot. Tow truck drivers do not have the ability to open the electronic gates.
Two tow truck drivers were also working the third shift at the time, Nathaniel Davis (Davis) and Anthony Stark (Stark). Stark observed a person later identified as Appellant's friend Treron Marshall (Marshall) creeping around the tow lot, punching locks out of vehicles and stealing stereo boxes. Marshall was a friend of Appellant's since his childhood. Marshall regularly visited Appellant at the tow lot on third shift and sometimes brought him dinner. Appellant had allowed Davis, driving his tow truck with Marshall as a passenger, access into the lot. Stark reported *842 Marshall's activity not to Appellant but to a different supervisor foreman, Cheryl Pogue (Pogue). Pogue in turn informed the acting manager of the tow lot, Edwin Young (Young). Young went to the tow lot and called the police. Upon arrival at the tow lot, Officers Ellis Brown and Jennifer Nemeth (Officers Brown and Nemeth) found Marshall and Davis in a City tow truck filled with stolen items and stopped at the exit gate from the lot, which could only be opened by remote control from the tow lot office where Appellant, alone, was on duty.
When the police interviewed Marshall and Davis, they implicated Appellant in the theft scheme. Police determined they had probable cause to believe Appellant was involved in the theft and applied for warrants, arresting all three men. Appellant was charged with stealing over $500. The criminal investigation is ongoing and the tow lot is still pursuing charges against Appellant.
Appellant admitted knowing Marshall and having been his friend for a long time. The record shows Appellant was in telephone contact with Marshall during the night of the incident. Appellant's car was found at a service station lot mentioned by Marshall or Davis in their statements to police.
Although the evidence was in conflict, the Commission found Marshall regularly came to the tow lot to visit Appellant during the third shift and at no other time. There was no evidence Marshall was authorized to be on the premises after 6 p.m. by any of Appellant's superiors. In addition, the Commission found the tow lot is secured by fencing and electronic gates, and access is through those gates exclusively.
Appellant was discharged from his position for complicity in theft from the City's tow lot occurring on October 15-16, 2014. Prior to his discharge, the Appointing Authority scheduled a pre-termination review to consider Appellant's termination because of his involvement in the theft. Appellant was informed by letter dated December 15, 2014, of the time and date of the review. The review was held December 18, 2014, at which Appellant was present with his union representative. After the hearing, the Appointing Authority determined Appellant should be dismissed. Appellant appealed his discharge to the Commission. Patrick Deaton, Hearing Officer for the Commission, conducted an evidentiary hearing. Appellant appeared with counsel Paul Schmitz (Schmitz) and the Appointing Authority appeared in person with Assistant City Counselor Brent Dulle (Dulle). Testimony and evidence were adduced. After taking the matter under submission, the Commission entered a decision upholding Appellant's discharge. Appellant appealed the Commission's decision to the trial court, which affirmed it. This appeal follows. Additional facts pertinent to the appeal will be adduced as necessary.
Points on Appeal
In his first point, Appellant contends the Commission's decision is unsupported by competent and substantial evidence, as are its findings that Appellant's conduct violated Administrative Regulation 117[1] (AR
*843 117) or the City's Code of Conduct; Appellant *844 allowed his friend and non-employee Marshall onto the tow lot during non-business hours; and Marshall only appeared at the tow lot during Appellant's shift.
In his second point, Appellant claims the Commission's decision is arbitrary, capricious, an abuse of discretion, and unauthorized by law because the finding that the arresting police officers had probable cause to believe Appellant was involved in theft is a legal conclusion or is unsupported by competent and substantial evidence.
In his third point, Appellant maintains the Commission erred in failing to conclude Appellant was terminated without being afforded adequate notice of how his conduct or the fact he was arrested violated AR 117, which constituted the cause for the City's termination of Appellant's employment.
Standard of Review
Our scope of review is limited to a review of the administrative ruling and not the decision of the trial court. Lagud v. Kansas City Bd. Of Police Comm'rs, 136 S.W.3d 786, 791 (Mo. banc 2004). Pursuant to article V, section 18 of the Missouri Constitution we are to determine whether the agency's action is "supported by competent and substantial evidence upon the whole record." Under Section 536.140.2,[2] when the Court reviews the record to determine if the findings of the agency are supported by substantial and competent evidence, the Court must look to the whole record and not merely the evidence that supports the decision. Lagud, 136 S.W.3d at 791. Thus, a reviewing court is no longer required to view the evidence in a light most favorable to the agency's decision. Id.
For evidence to be substantial, it must be competent and support the Commission's discretionary determination. Morgan v. City of St. Louis, 154 S.W.3d 6, 8 (Mo. App. E.D. 2004) ; Mertzlufft v. Civil Service Comm'n, 85 S.W.3d 63, 66 (Mo. App. E.D. 2002). Substantial evidence is competent evidence that would have probative force upon the issues if believed. Morgan, 154 S.W.3d at 8 ; Mertzlufft, 85 S.W.3d at 66.
Where the evidence supports opposing findings, the Court affords deference to the Commission's decision. Coffer v. Wasson-Hunt, 281 S.W.3d 308, 310 (Mo. banc 2009). However, the Court does not defer to the Commission's findings on questions of law. Vivona v. Zobrist, 290 S.W.3d 167, 170 (Mo. App. W.D. 2009).
Discussion
Point I
Appellant maintains the Commission's finding that Appellant was involved in the thefts committed or attempted by Marshall on the night of October 15-16, 2014, is not supported by substantial evidence. Appellant argues substantial evidence does not support the Commission's findings because the evidence does not show each and every element of the crime of stealing or of conspiracy to commit stealing. Appellant's contention is without merit for several reasons.
Here, the circumstantial evidence clearly supports a finding Appellant aided and abetted Marshall. One can commit a violation of the criminal law by aiding and abetting another in committing it. A person is deemed criminally responsible for the conduct of others when with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.
*845 State v. Holmquest, 243 S.W.3d 444, 448 (Mo. App. W.D. 2007). Any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction. M.A.A. v. Juvenile Officer, 271 S.W.3d 625, 629 (Mo. App. W.D. 2008). The law imputes to the defendant the criminal agency of his accomplices. Id.
Marshall and Appellant were friends and Marshall frequented the tow lot whenever Appellant was on duty. Access to and from the lot was controlled by remote operation from the office where Appellant was in charge. Marshall and Appellant were in telephone contact on the night of the incident. Marshall was observed in the act of stealing items from cars on the lot. The tow truck in which Marshall and Davis were apprehended was stopped at the exit gate, which could only be opened from the office where Appellant was stationed, alone. The truck was running with its lights on, and had speaker boxes, stereos, car batteries and other items inside the truck and on its flatbed. Marshall and Davis implicated Appellant in the theft scheme. Appellant's car was found in the location referred to by Marshall and Davis during their interrogations.
Additionally, Appellant's conduct justified his termination under AR 117. First, the regulation provides for dismissal for:
[t]he Commission of any act while on duty or off duty, which would be a violation of Federal, State or local law, other than minor traffic violations. This does not mean that a conviction or even arrest need have occurred for such a violation.
(Emphasis added.) Stealing property from the cars on the tow lot or assisting his friend in such theft would be a violation of state law. A conviction beyond a reasonable doubt or an arrest based on probable cause is not required for Appellant to be dismissed under this provision of AR 117. Rather, the Commission bears the burden of proving that Appellant's employment should be terminated by a preponderance of the evidence. Spencer v. Zobrist, 323 S.W.3d 391, 398 (Mo. App. W.D. 2010). Appellant was in fact arrested for stealing over $500 because the police determined they had probable cause to believe he had aided Marshall and Davis in the theft.
Second, the regulation provides for dismissal for "[v]iolating any of the provisions of the City's Code of Conduct." The City's Code of Conduct provides that "City Employees are responsible for ensuring that their own actions are not illegal, unethical, or in violation of the rules and regulations of the City of St. Louis." Again, the City is not obliged to prove Appellant guilty of theft beyond a reasonable doubt. It need only prove Appellant violated the City's rules by violating the law. Here, there was ample competent evidence in the record to establish Appellant violated AR 117 by acting illegally in assisting Marshall and Davis in stealing from the cars in the tow lot on the night of October 15-16, 2014.
Based on the foregoing, we find the Commission's decision is neither contrary to law nor against the weight of the evidence. Appellant's Point I is denied.
Point II
Appellant's contention that the Commission's finding he was arrested on probable cause is not supported by evidence and is an erroneous legal conclusion is without merit. The City's Code of Conduct and AR 117 prohibit conduct that "would be" illegal. The standard of proof is whether the Commission's findings are supported by substantial and competent evidence, not probable cause. Lagud, 136 S.W.3d at 791.[3]
*846 The Commission found substantial and competent evidence demonstrated Appellant violated the City's rules by assisting Marshall in stealing from the tow lot, and such conduct "would be" illegal. The City's rules are not dependent on an arrest and conviction. Appellant's arguments that Marshall did not have sole access to and from the lot through Appellant because he could have climbed under the lot's fence are merely a theory or evidence that supports an opposing finding. With regard to opposing findings, the Court affords deference to the Commission's decision. Coffer, 281 S.W.3d at 310.
Based on the foregoing, we determine the Commission's finding Appellant participated in illegal conduct is supported by substantial competent evidence and is not an erroneous legal conclusion. Further, we find a probable cause finding by the police is merely supportive of, and not necessary to, the Commission's finding by a preponderance of evidence Appellant should be terminated for violation of AR 117 and the City's Code of Conduct for assisting Marshall in theft from the cars on the tow lot. Appellant's Point II is denied.
Point III
Appellant maintains he was terminated without adequate notice of his violation of AR 117. Appellant was accorded notice of charges and a pre-termination review before the final decision was made to discharge him. Appellant was hand-delivered a pre-termination letter dated December 15, 2014, which informed him the City Towing Division was considering termination "per [AR 117], as evidenced by your arrest while on the job on October 16, 2014, for your involvement in theft of Property/Services $500-$25,000 (stealing).... A Pre-Termination Hearing has been set for Thursday, December 18, 2014 at 2:30 p.m. at the Street Department Office at 1900 Hampton Avenue...." Appellant appeared at the review accompanied by a union representative and was given the opportunity to refute the allegations against him, and present any evidence and mitigating circumstances he had. With regard to his claim of procedural unfairness, the notice to Appellant referenced his arrest for his involvement in the crime of stealing on the date of October 16, 2014. This was clearly sufficient to put Appellant on notice of the charges against him. The notice provided to an employee must be sufficiently detailed such that the employee can understand the basis for the disciplinary action and be able to oppose the action. Schwartz v. City of St. Louis, 274 S.W.3d 509, 513 (Mo. App. E.D. 2008). The notice need not "reach the technical precision of a criminal indictment or information" as long as it advises the employee of the "essential elements" of the charge and the nature of the misconduct. Id. The Commission is not held to the standard of pleading a criminal charge. The notice here was sufficient to apprise Appellant of why he was being considered for termination and his union representative appeared with him at a pre-termination hearing in order to present his defense to the charges against him.
Because there is no merit to Appellant's claim of insufficient notice, his Point III is denied.
Conclusion
The Commission's decision is affirmed.
Lawrence E. Mooney, J., and James M. Dowd, J., concur.

City of St. Louis Department of Personnel Administrative Regulation No. 117, Discipline Policy, provides in pertinent part:
All employees are expected to conduct themselves in accordance with department/division policies, Administrative Regulations of the Department of Personnel, Civil Service Rules and Regulations, Ordinances, the Charter of the City of St. Louis, and generally acceptable work behaviors including the City's Employee Code of Conduct. Employees in supervisory positions should set an example by their own conduct, work habits, and commitment to the City Service.
...
Disciplinary actions include: A. Written reprimand; B. Suspension (up to 28 calendar days in a 12 month period); C. Temporary reduction in pay for a period not to exceed 13 bi-weekly pay periods; D. Disciplinary demotion (to a vacant position in lower pay grade for which the employee is qualified within the division/department); E. Dismissal
...
VII. PRE-TERMINATION WRITTEN NOTICE AND REVIEW When corrective discipline has failed to correct the employee's actions or the employee commits an act(s) which is (are) so serious that corrective discipline is inappropriate, dismissal from the City Service shall be considered. The Department of Personnel and/or the City Counselor's Office should be consulted prior to dismissing an employee. The following steps must be adhered to when dismissing an employee for cause from the City Service:
A. Pre-termination Written Notice. A pre-termination review is required prior to the imposition of a dismissal of a permanent employee. The pre-termination review is an informal procedure in which the appointing authority or his/her designee advises the employee of the charges against him/her, gives an explanation of the charges and evidence, allows the employee and/or his/her representative an opportunity to review the evidence, and then allows the employee and/or his/her representative an opportunity to present facts to mitigate the proposed penalty. This review is not a formal hearing, nor is it an extended procedure at which the employee is afforded the right to present witnesses, cross-examine individuals, etc. The employee shall also be informed of his/her right to have a representative present and, if the employee chooses to exercise the right, every effort should be made to schedule the pre-termination review so that a representative can attend and represent the employee....
The written notice shall be hand-delivered to the employee or sent by certified mail and include the following: That dismissal is being considered; The specific charges/reasons; The place, date and time of review; The right to have a representative; If the employee's prior work record is being considered; Failure of the employee to appear shall waive the employee's right to a pre-termination review.
B. Pre-termination Review. The pre-termination review should be conducted before the employee's last day at work or within thirty (30) days of being placed on forced leave (see below), unless the forced leave has been extended with the approval of the Director of Personnel. The appointing authority should provide employees with sufficient notice to obtain representation if so requested or otherwise prepare for the pre-termination review. Typically three (3) to five (5) working days (excluding weekends) should suffice although other time frames may be agreed upon by the parties. The following should occur: State purpose of review (to consider employee's dismissal); Advise employee of charges; Allow the employee and/or his/her representative an opportunity to review the evidence; Give the employee the opportunity to verbally respond to the charge; present mitigating circumstances and submit any written witness statements; Maintain record of review, list of those present, the date, the proceedings, and any relevant facts presented. The appointing authority shall make a determination regarding the employee's employment status within fourteen (14) calendar days from the pre-termination review and notify the employee of the decision in writing within (14) fourteen calendar days from the date of review. This decision may be: (1) no disciplinary action is required; (2) dismissal is too severe, but a lesser form of disciplinary action is required; or (3) dismissal is warranted.
Exceptions to Progressive Discipline. There are some actions which are so serious that progressive discipline is inappropriate or insufficient and, therefore, immediate dismissal is warranted. Listed below are some examples of actions which may be exceptions to progressive discipline. These examples are not intended to be all inclusive: The commission of any act while on duty or off duty which would be a violation of Federal, State or local law, other than minor traffic violations. This does not mean that a conviction or even an arrest need have occurred for such a violation....

All statutory references are to RSMo 2000, unless otherwise indicated.

Although not necessary, we find the evidence in the record supports probable cause to arrest Appellant for complicity in theft on the night in question.